**Johnie H. HICKS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–287.

United States Court of Veterans Appeals.

Nov. 27, 1995.

Andrew H. Marshall, Athens, GA, was on the brief, for appellant.

Mary Lou Keener, General Counsel, Atlanta, GA; Norman G. Cooper, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel, Washington, DC; and Peter M. Donawick, Fredericksburg, VA, were on the brief, for appellee.

Before FARLEY, MANKIN, and IVERS, Judges.

IVERS, Judge:

Johnie H. Hicks appeals a January 26, 1994, decision of the Board of Veterans' Appeals (BVA or Board) denying increased ratings for service-connected degenerative changes of the right and left hips, which are currently rated noncompensable. *Johnie H. Hicks*, BVA 94–00760 (Jan. 26, 1994). The Court has jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, the Court will vacate the January 1994 decision of the BVA and will remand the matter for readjudication consistent with this opinion.

## I. Factual Background

The appellant served on active duty in the United States Army from September 15, 1965, to August 15, 1968. Record (R.) at 21.

A January 1987 VA radiologic report stated that the appellant's left and right hips showed evidence of "very minimal degenerative spurring of the superior acetabular margin," but that both hips were otherwise normal. R. at 293.

On August 23, 1990, the appellant wrote to a VA regional office (RO) seeking increased evaluations for previously service-connected conditions. R. at 300. The RO denied increased evaluations for those conditions, which had theretofore been rated under the rubric of osteoarthritis of the knees, cervical and lumbar spines, and both shoulders, but began separately rating the conditions and included a rating for a thoracic spine condition. *See* R. at 318–19; *see also* R. at 320–21. The conditions were thus rated as degenerative changes of the cervical spine, lumbar spine, thoracic spine, both knees, and both shoulders. R. at 319.

The appellant testified at a personal hearing before an RO hearing officer on January 9, 1991. R. at 339–51. At that hearing, the appellant referred to problems with his hips. R. at 342. He also stated that he was employed full-time as a drug and alcohol addiction counselor. R. at 345. In a November 19, 1991, letter, the appellant's service representative stated that the appellant's arthritic condition had resulted in limitation of motion of the hips and that the appellant could not squat or walk for distances and had difficulty going up or down stairs because of hip pain. R. at 368. In a February 11, 1992, decision, the Board remanded the appellant's case for an orthopedic examination to determine which joints were affected by osteoarthritis and the nature and severity of the arthritic involvement. R. at 372.

The appellant underwent a VA examination of the hips on August 25, 1992. Supplemental (Suppl.) R. at 21, 23, 26. At that time, a VA physician noted: "All joints painful *except hip joints.*" Suppl.R. at 17 (emphasis added). In the resulting report, a VA physician noted, under the heading "SUBJECTIVE COMPLAINTS," that there was "[n]o pain in hip, there is some stiffness." Suppl.R. at 21. In that report, the physician also described that there was popping in both hips with range of motion and that the hips were painful near full range of motion. *Ibid.* A VA radiographic report stated with regard to the left hip: "The hip joint appears well preserved. There is very minimal spurring off the lesser trocha[n]ter and the lateral aspect of the superior rim of the acetabulum. There is some minimal irregularity of the lateral aspect of the femoral head." Suppl.R. at 23. (A trochanter is "a rough prominence or process at the upper part of the femur of many vertebrates serving usu[ally] for the attachment of muscles...." WEBSTER'S MEDICAL DESK DICTIONARY 733 (1986). An acetabulum is "the cup-shaped socket in the hipbone." *Id.* at 5.) The VA radiologist who prepared the report also gave an impression of "some mild degenerative change." Suppl.R. at 23. A VA radiographic report stated with regard to the right hip: "There is some degenerative change of the lesser and greater trochanters. The hip joint appears well preserved. No fracture or bony destruction is identified." Suppl.R. at 26. The impression given was of "[m]ild degenerative change." *Ibid.*

On October 23, 1992, the RO awarded service connection for degenerative changes of the left and right hips, each of which it rated noncompensable. R. at 414. In that same decision, the RO also increased the evaluations for the appellant's other service-connected disabilities to a combined rating of 70% disabling. R. at 413–14. In a September 23, 1993, statement, the appellant's service representative limited the disagreement with the October 1992 RO decision to the ratings for the right and left hip conditions. R. at 424–25. The Board denied compensable evaluations for degenerative changes of the right and left hips on January 26, 1994. *Hicks,* BVA 94–00760, at 7.

## II. Analysis

 The Court reviews the Board's findings of fact under the "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Butts v. Brown,* 5 Vet.App. 532, 535 (1993) (en banc); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). The Board must base its decisions on "all evidence and material of record," 38 U.S.C. § 7104(a), and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record," 38 U.S.C. § 7104(d)(1). *See Douglas v. Derwinski,* 2 Vet.App. 435, 438–39 (1992) (en banc), *vacating in part on other grounds,* 2 Vet.App. 103 (1992); *Gilbert,* 1 Vet.App. at 56–57. Pursuant to these statutory requirements, the Board must "account for the evidence which it finds to be persuasive or unpersuasive," and provide reasons or bases for rejecting evidence submitted by or on behalf of the claimant. *Gilbert,* 1 Vet. App. at 57.

 Compensation for service-connected degenerative changes in the hips is available under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5003 (1994):

Arthritis, degenerative (hypertrophic or osteoarthritis):

Degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved (DC 5200 etc.). When however, the limitation of motion of the specific joint or joints involved is noncompensable under the appropriate diagnostic codes, a rating of 10 [percent] is for application for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added under diagnostic code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. In the absence of limitation of motion, rate as below:

With X-ray evidence of involvement of 2 or more major joints or 2 or more minor

joint groups, with occasional incapacitating exacerbations....................20

With X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups....................10

NOTE (1): The 20 [percent] and 10 [percent] ratings based on X-ray findings, above, will not be combined with ratings based on limitation of motion.

NOTE (2): The 20 [percent] and 10 [percent] ratings based on X-ray findings, above, will not be utilized in rating conditions listed under diagnostic codes 5013 to 5024, inclusive.

Thus, pursuant to the diagnostic code, once degenerative arthritis is established by X-ray evidence, there are three circumstances under which compensation may be available for service-connected degenerative changes: (1) where limitation of motion of a joint or joints is objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion, and that limitation of motion meets the criteria in the diagnostic code or codes applicable to the joint or joints involved, the corresponding rating under the code or codes will be assigned; (2) where the objectively confirmed limitation of motion is not of a sufficient degree to warrant a compensable rating under the code or codes applicable to the joint or joints involved, a rating of 10% will be assigned for each major joint or group of minor joints affected, "to be combined, not added"; (3) where there is no limitation of motion, a rating of 10% or 20%, depending upon the degree of incapacity, may still be assigned if there is X-ray evidence of the involvement of 2 or more major joints or 2 or more minor joint groups.

DC 5003 is to be read in conjunction with 38 C.F.R. § 4.59 (1994), which provides as follows:

With any form of arthritis, painful motion is an important factor of disability, the facial expression, wincing, etc., on pressure or manipulation, should be carefully noted and definitely related to affected joints. Muscle spasm will greatly assist the identification.... The intent of the schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. It is the intention to recognize

actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. Crepitation either in the soft tissues such as the tendons or ligaments, or crepitation within the joint structures should be noted carefully as points of contact which are diseased. Flexion elicits such manifestations. The joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint.

In *Lichtenfels v. Derwinski,* 1 Vet.App. 484, 488 (1991), the Court stated:

Read together, DC 5003, and § 4.59 thus state that *painful* motion of *a major joint or groups* caused by degenerative arthritis, where the arthritis is established by x-ray, is deemed to be limited motion and entitled to a minimum 10–percent rating, per joint, combined under DC 5003, even though there is no *actual* limitation of motion.

*See also Schafrath v. Derwinski,* 1 Vet.App. 589, 592 (1991).

Additionally, DC 5003 is complemented by a separate regulation which relates to pain in the musculoskeletal system and which provides as follows:

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part which becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show

evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity[,] or the like.

38 C.F.R. § 4.40 (1994); *see also* 38 C.F.R. § 4.45 (1994) (directing that painful motion must be considered part of disability when rating joints for purposes of disability benefits); *cf. DeLuca v. Brown*, 8 Vet.App. 202, 205–06 (1995) (Court rejected Secretary's argument that regulation specifying rating based on limitation of motion ipso facto also included rating for pain).

■ DC 5003 and 38 C.F.R. § 4.59 deem *painful* motion of a major joint or groups caused by degenerative arthritis that is established by X-ray evidence to be limited motion even though a range of motion may be possible beyond the point when pain sets in. *See Lichtenfels*, 1 Vet.App. at 488. In this case, the record contains references to hip pain and stiffness since at least the January 1991 personal hearing. R. at 342; *see* R. at 368. The Board considered the applicability of all the regulations regarding pain, including 38 C.F.R. §§ 4.40, 4.45, and 4.59, as well as DC 5003, but found that the appellant's complaints of hip pain were not persuasive. *Hicks*, BVA 94–00760, at 7. The Board based its finding on a 1982 VA rating examination report. *Hicks*, BVA 94–00760, at 7. In that report, a VA physician stated:

> [T]he patient has multiple somatic complaints with minimal objective changes on the physical examination which makes this examiner[ ] suspect a psychogenic overlay in his symptomatology. On present examination, there is no evidence of any neurologic deficit and in my opinion, he does not have symptoms of nerve root irritation in the cervical area. Also, there is no evidence of thoracic outlet syndrome on present exam. The paresthesias he describes in a glove distribution in the upper extremities[ ] is of course a subjective symptom, but as above, there are no objective neurological changes.

R. at 203. The Board's reliance on the August 1982 VA examination is flawed because that examination was not intended to evaluate any complaints of hip pain. Nor could that examination have been able to evaluate the appellant's right and left hip conditions since those conditions became apparent subsequent to that examination. Nevertheless, the Board relied on a comment in a *1982* VA examination to discount the complaints of pain, popping, and stiffness in a *1992* VA examination. *See Harder v. Brown*, 5 Vet. App. 183, 188–89 (1993) (Court reversed BVA decision where BVA's findings were predicated on a flawed analysis of evidence).

The Board also stated that "[g]iven the limited radiological and clinical findings, we do not find the veteran's complaints of hip pain to be persuasive." *Hicks*, BVA 94–00760, at 7. This finding, however, was made possible by an inadequate examination. Although the Board initially remanded the claim for the conduct of an adequate examination in February 1992 (R. at 372–73), the August 1992 VA examination did not provide the requisite specificity regarding the appellant's functional loss due to pain. As the Secretary points out in his brief, it is unclear whether the reference to popping in the hips and pain near full range of motion in the August 1992 examination report (*see* Suppl.R. at 21) was a finding upon examination or a description of the condition that the examiner was being asked to evaluate. Secretary's Brief (Br.) at 20. In *Voyles v. Brown*, 5 Vet.App. 451, 453 (1993), the Court remanded where a VA examination report noted the veteran's complaints of pain, but did not discuss the impact of any pain on the functional loss in the veteran's low back and hip conditions. *See* 38 C.F.R. § 4.2 (1994) (if report does not contain sufficient detail, rating board must return report as inadequate for evaluation purposes); *see also Ardison v. Brown*, 6 Vet.App. 405, 407 (1994) (inadequate examination frustrated judicial review); *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991) (where claim is well grounded, Board must seek conduct of thorough, contemporaneous examination); *see also* 38 U.S.C. § 5107(a). The Secretary concedes, and the Court agrees, that the August 1992 VA examination was inadequate for evaluation purposes. Secretary's Br. at 20. Therefore, the Court will remand the claim for the Board to order the conduct of an additional medical examination that complies with all pertinent statutory and regulatory requirements, including the requirement of sufficient detail

on the issue of functional loss due to pain, if any.

In addition, the Board did not address whether the appellant was entitled to a rating even though there was no limitation of motion, the final set of circumstances under which a disability rating may be assigned for degenerative changes of the hips. In his brief, the Secretary argues that the appellant is not eligible for consideration of a disability rating under this set of circumstances because the first note to DC 5003 precludes the assignment of a rating where compensable evaluations have been assigned to other joints based on limitation of motion of those joints. Secretary's Br. at 17. The portion of the diagnostic code reads as follows: "NOTE (1): The 20 [percent] and 10 [percent] ratings based on X-ray findings, above, will not be combined with ratings based on limitation of motion." 38 C.F.R. § 4.71a, DC 5003. As indicated in the Secretary's brief, the use of the term "combined with ratings" might be seen as a term of art referring to the combination of different disability ratings. *See* 38 C.F.R. § 4.25 (1994) (providing for combination of ratings); *Lathan v. Brown*, 7 Vet. App. 359, 360 (1995); *Esteban v. Brown*, 6 Vet.App. 259, 261 (1994). On remand, in the event that a rating is not assigned pursuant to a readjudication as described in the Court's remand above, the Board will be required to address this issue in the first instance.

■ In his brief, the appellant argues that reversal is the appropriate remedy. Reversal is the appropriate remedy when "[t]here is absolutely no plausible basis" for the BVA's decision and where that decision "is clearly erroneous in light of the *uncontroverted* evidence in appellant's favor." *Hersey v. Derwinski*, 2 Vet.App. 91, 95 (1992) (emphasis added). This situation is unlike the factual situation presented in *Karnas v. Derwinski*, 1 Vet.App. 308, 311 (1991), where the Court reversed a BVA decision reducing a veteran's disability rating. In reversing the BVA decision, the Court stated in *Karnas:* "[B]ecause there is *no* evidence to support the BVA determination, it is obvious that a mistake has been· committed, the finding is not plausible, there can be only one permissi-

ble view of the evidence, and, thus, the finding is clearly erroneous." *Karnas*, 1 Vet. App. at 311 (emphasis added); *cf. Harder*, 5 Vet.App. at 189 (sum of all the evidence "dictated" grant of service connection); *Barnhill v. Brown*, 5 Vet.App. 75, 77 (1993) (Court assigned 70% rating for post-traumatic stress disorder where there was "no plausible basis" for BVA's denial of increased evaluation and where "record compellingly" established entitlement to increased evaluation); *Schafrath*, 1 Vet.App. at 596 (because case involved a rating reduction, not a rating increase, appropriate remedy was reversal of BVA decision and reinstatement of prior rating). Here, there is evidence that the appellant has experienced pain in his hips as well as evidence that he has not experienced pain in his hips.

■ In addition, the inadequate examination frustrates effective judicial review, but it does not dictate entitlement to an increased evaluation. *See Gilbert*, 1 Vet.App. at 57 (lack of adequate reasons or bases in the BVA's decision frustrates effective judicial review) (quoting *Camp v. Pitts*, 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973)). As the Supreme Court of the United States has stated:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 1607, 84 L.Ed.2d 643 (1985); *see also Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 347 (D.C.Cir.1989) ("The proper course in a case with an inadequate record is to vacate the agency's decision and to remand the matter to the agency for further proceedings."). Therefore, the appropriate remedy is a remand.

### III. Conclusion

Accordingly, upon consideration of the record, the appellant's brief, and the Secretary's

brief, the Court VACATES the January 1994 decision of the BVA and REMANDS the matter for readjudication consistent with this opinion.