Lloyd C. POND, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 97–1780.

United States Court of Appeals
for Veterans Claims.

April 21, 1999.

Charlene S. Jones and Barton F. Stichman were on the brief for the appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; Jacqueline M. Sims, Acting Deputy Assistant General Counsel; and Darryl A. Joe were on the brief for the appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and GREENE, Judges.

HOLDAWAY, Judge:

The appellant, Lloyd C. Pond, appeals the June 1997 decision of the Board of Veterans' Appeals (Board or BVA) which determined that he was not entitled to service connection for a cervical spine disorder. The appellant argues that the decision of the Board should be reversed because the uncontroverted evidence of record supports service connection of the spinal disorder. The appellant also alleges that the Board failed to adjudicate his claim for an earlier effective date for his lumbosacral spine disorder and that that issue should be remanded to the Board for adjudication. The Secretary concedes that the Board failed to adjudicate the effective date issue. The Secretary also concedes that the cervical spine disorder claim should be remanded because the Board failed to adequately develop the record. However, the Secretary contends that there is a plausible basis in the record for the Board's decision that the cervical spine injury was not service connected, and, therefore, reversal of the Board's decision is not appropriate in this matter. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will vacate the decision of the Board and remand the matter for readjudication.

## I. FACTS

The appellant served on active duty in the U.S. Army from August 1948 to May 1952. His service medical records document that he was involved in a jeep accident in 1950 that resulted in lower back and left-leg pain. X-ray examinations of the appellant's lumbosacral spine were normal. He was diagnosed with a chronic, strained left sacroiliac joint. He was also treated in early 1952 for continuing pain in his lower back that radiated down his left leg. X-ray examinations showed minimal irregular narrowing and haziness in the left sacroiliac joint. The appellant's service medical records do not report any treatment or complaints for a cervical spine injury. His discharge examination reported that physical examination of his spine was normal.

Upon discharge from military service, he applied for VA disability compensation for asthma and a back injury. The appellant submitted a certificate from a physician stating that he had a ruptured intervertebral disc in the lumbar region. X-ray examination of his lumbosacral spine revealed minimal scoliosis and questionable narrowing of the lumbosacral joint. In 1954, he was granted service connection for lumbosacral strain.

A neurological examination in 1958 revealed that the appellant had continued lower back pain along with weakness and paresthesia in his left leg. He was diagnosed with sciatic neuropathy. In 1963, the appellant was afforded a VA neurological examination, wherein he complained of continued lower back pain that radiated to his left leg. The examiner reported that sciatic neuropathy was not found. An April 1966 VA examina-

tion for compensation purposes found that the appellant's musculoskeletal system was normal.

The appellant filed an application for an increased disability rating for his service-connected lumbosacral disability in April 1993. At that time, he also submitted a statement indicating that he had received a *neck* and back injury while in service in 1950. He also stated the following:

> Early examinations and treatment indicate injury to the cervical and thoracic spine as well as the lumbo[ ]sacral.

> My primary symptoms are neck and back pain with associated occipital headaches ... which seems to be increased when the atlas and cervical spine are subluxated. The C–1 subluxation results in concomitant tractionization, reticular formation involvement, over-facilitation and spastic contracture of the spinal muscle structures, to include lumbar and pelvic distortion in the frontal and transverse planes. This spinal distortion results in lumbo[ ]sacral and sciatic pain with associated intermittent paresthesia in the Achilles area of the left leg.

He reported that he had received treatment from Drs. Gordon Miller and Ralph Gregory. He also reported that he was a licensed chiropractor. The VA regional office (VARO) received chiropractic treatment records from Keith E. Denton, D.C., for the period of April 1967 to March 1987. The records contained no diagnoses or x-rays. Dr. Denton stated that he had treated that appellant for recurring spinal injuries, and that the original injury had occurred in an accident in the 1950's while the appellant was in service. The appellant also submitted medical articles relating to atlas subluxation complex. In July 1994, the VARO denied the appellant's claim for service connection of his cervical spine disorder because there was no evidence of the disorder in his service medical records or early VA medical records. The appellant filed a timely Notice of Disagreement stating that he believed that the VARO decision denying his claim relating to cervical spine impairment was erroneous because he had not been afforded a VA examination. A Febru-

ary 1995 VA spine examination found that the appellant had osteoarthritis of the lumbar spine with root impingement on the left. The examiner opined that the appellant's back condition was directly connected to his jeep accident in service. The examiner .did not discuss the appellant's cervical condition. However, an x-ray examination of the appellant's cervical spine revealed "mild C–4 spondylosis .... [but][n]o compression fractures, malalignments[,] or evidence for neural foraminal narrowing." X-ray evidence of his thoracic spine also showed mild spondylosis, but no malalignment. The VARO confirmed its denial of the veteran's claim for service connection of his cervical spine condition. In September 1995, the appellant filed a Substantive Appeal. The appellant also submitted medical articles relating to etiology and treatment of degenerative disc disease. A November 1985 VA progress note stated that he had a history of degenerative disc and joint disease of the cervical and lumbar spines.

In February 1996, the VARO requested a VA medical opinion about any causal relationship between the appellant's service-connected lumbosacral disorder and his cervical spine impairment. At a February 1996 VA personal hearing, the appellant testified that he had traumatic degenerative changes in his neck that, in his opinion, had resulted from the 1950 jeep accident. The hearing officer stated that he was going to request a medical opinion about whether the appellant's cervical spine was caused by the in-service jeep accident. The appellant made the point that Drs. Miller and Denton had treated his neck with corrective care along with his back. The hearing officer asked the appellant to obtain any clinical documents from Dr. Denton relating to his neck. The appellant explained that the records from Dr. Denton showed measurements from x-rays that had provided the adjustment angles for his cervical spine.

At a March 1996 VA examination, the examiner discussed the appellant's lumbar spine condition and opined that it was related to the appellant's in-service back injury. However, the examiner did not mention the appellant's cervical spine problems. The

hearing officer granted the appellant's claim for service connection of degenerative changes in his lumbar spine, effective July 6, 1994. The hearing officer also denied his claim for service connection of his cervical spine.

The VARO received a letter from Dr. Denton stating:

Dr. Pond's vehicular injury caused cervical spinal trauma, resulting in unilateral spastic contracture to the deep extensor or anti gravity musculature of the entire spinal column. Inherent in this injury is pelvic distortion or tipping, leg length inequality, and spinal imbalance.

Specifically, this patient received an injury that caused the first cervical vertebrae to misalign, or displace to the right of the occipital condyles of the skull. Resulting from this component of the misalignment is a stretching or tractionization of the reticular formation of the brain stem. This mechanism is thought to be a result of either direct mechanical tractionization, or dentate ligament stretching.

... This misalignment of the first cervical vertebrae, caused a loss of function of the inhibitatory control, resulting in increased tonus, or unilateral spastic contracture of the deep extensor musculature.

. . . .

*Treatment:* Manual correction (adjustment) of the misalignment factors or pattern of injury of the cervical spine.

Joe E. Brewer, who served on the police force with the veteran in Pampa, Texas, sent the VARO a letter indicating that he recalled that the appellant had had daily pain from his injury that he had received while in service. He also stated that the veteran had begun to receive treatment from Dr. Miller at that time. E.L. Crowder, D.C., wrote a letter indicating that the appellant had received chiropractic care of his cervical spine from 1953 to 1956 while a student at Palmer College of Chiropractic. However, Dr. Crowder stated that the treatment records had not been retained and he could not substantiate the nature or severity of the appellant's condition.

In April 1996, the appellant filed a Notice of Disagreement reiterating his belief that he had sustained a cervical injury in service. He also requested retroactive payments beginning in April 1993 for the award of service connection of degenerative changes in his lumbar spine. The VARO issued a decision in August 1996 confirming its denial of the appellant's claim for service connection of the cervical spine. The VARO did not discuss the appellant's claim for an earlier effective date for his award of service connection for degenerative changes in his lumbar spine.

In December 1996, the appellant submitted the following statement:

I believe the whiplash, acceleration/[d]eceleration was not addressed at the time of the back injury. I've had problems with the [n]eck, cervical spine, and lumbosacral spine since the injury.

The high incidence of cervical osteoarthritis and spondylosis observed in those presenting with symptoms years after acceleration/deceleration injuries suggests a very strong causal relationship, especially when the disease is localized to one or two levels.

I believe the cervical spine and neck condition is related to the same injury received to the lumbosacral spine area. It should be rated as service connected.

The Board found that the evidence of record was against service connection for the appellant's cervical spine condition. First, the Board found that the service and postservice medical records from 1950 to 1966 did not reference any complaints or treatment relating to a cervical spine injury. The Board found that those contemporary medical records were more probative than the appellant's testimony that he had experienced neck pain after his jeep accident. Second, the BVA rejected Dr. Denton's medical opinion that the appellant's cervical condition had been caused by the in-service jeep accident because Dr. Denton's opinion was (1) based solely on the veteran's history and (2) not supported by diagnostic or clinical findings. Third, the Board found that the statement by Dr. Cowder that the appellant had received chiropractic treatment to his cervical spine from 1953 to 1954 was not probative

of the existence of a cervical disorder because the treatment records were not available and the doctor did not remember the reason for the treatment. The Board also noted that the appellant had indicated that the treatment was provided for his lower back symptomatology. Lastly, the Board found that the first objective evidence of a cervical spine disorder was a February 1995 x-ray examination report that showed spondylosis of the C4 vertebrae. The Board noted that the objective evidence did not indicate that the cervical injury was caused by the jeep accident in service.

## II. ANALYSIS

### A. Cervical Spine Disability

■ Service connection is a factual determination by the Board that the Court reviews for clear error. *See Rose v. West,* 11 Vet.App. 169, 171 (1998). " 'A finding of fact is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.' " *Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). "[T]his Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... [the Court] cannot overturn them." *Id.* at 53. "The appellant bears the burden before this Court of establishing that the fact-finding below was clearly erroneous." *Zink v. Brown,* 10 Vet.App. 258, 259 (1997).

■ Additionally, the BVA's decision must include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(d)(1).

[T]he Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive. These decisions must contain clear analysis and succinct but complete explanations. A bare conclusory statement, without both supporting analysis and explanation, is neither helpful to the veteran, nor "clear enough to permit effective judicial review", nor in compliance with statutory requirements.

*Gilbert,* 1 Vet.App. at 57. The BVA cannot reject evidence favorable to the claimant without providing adequate reasons and bases for its decision. *See Meyer v. Brown,* 9 Vet.App. 425, 433 (1996).

■ "Moreover, the Board may not rely on its own unsubstantiated medical conclusions to reject expert medical evidence in the record; rather, the Board may reject a claimant's medical evidence only on the basis of other independent medical evidence." *Flash v. Brown,* 8 Vet.App. 332, 339 (1995); *see also Thurber v. Brown,* 5 Vet.App. 119, 122 (1993); *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991). However, a medical opinion based on a factual predicate that has been rejected by the Board lacks probative value. *See Reonal v. Brown,* 5 Vet.App. 458, 460–61 (1993) (holding that a medical opinion based on a factual predicate that had been rejected by the Board has no probative value and is not, therefore, material evidence that warrants a reopening of the appellant's claim).

■ In this matter, the Board failed to discuss the medical opinion of the appellant himself. The Board rejected the appellant's testimony that he had had neck pain since his discharge from service because his testimony was not supported by the contemporaneous objective medical reports. However, the Board did not discuss the appellant's opinions that his current neck condition was caused by the in-service jeep accident. The appellant is a medical professional, and he is therefore competent to provide medical nexus evidence. *See Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993); *Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992). This does not mean that the Board cannot consider the personal interest the appellant-expert has in his own case, but the Board is not free to ignore his opinion. *See Cartright v. Derwinski,* 2 Vet.App. 24, 25 (1991) (holding that while interest in the outcome of a proceeding "may affect the credibility of testimony, it does not affect competency to testify") (citing *Dixie Ohio Express Co. v. Lowery,* 115 F.2d 56, 57 (5th Cir.1940)); *see also Hatlestad v.*

*Derwinski*, 1 Vet.App. 164, 170 (1991). Therefore, the Board's failure to discuss his opinion was error. *See Cartright* and *Gilbert*, both *supra.*

■ Additionally, the Secretary breached his duty to assist the appellant in developing the pertinent facts in this case. "[F]ulfillment of the statutory duty to assist ... includes the conduct of a thorough and contemporaneous medical examination, one which takes into account the records of prior medical treatment, so that the evaluation of the claimed disability will be a fully informed one." *Green v. Derwinski*, 1 Vet.App. 121, 124 (1991). Twice VA requested medical examinations to discuss the etiology of the appellant's cervical spine disorder. In both instances the medical examiners completely ignored those instructions. The appellant has submitted a well-grounded claim for a cervical spine disability, and he is entitled to a thorough and contemporaneous medical examination that discusses the etiology of his cervical condition. *See id.*

■ Where the Board fails to provide an adequate statement of reasons and bases or fails to insure proper development of the claim, the appropriate remedy is to remand the matter to the Board for further proceedings. *See Zink, supra; Hicks v. Brown*, 8 Vet.App. 417, 422 (1995). However, the appellant contends that the evidence in favor of his claim is uncontroverted, including the medical opinions given by himself and Dr. Denton, and that the decision of the Board should therefore be reversed, not remanded. *See James v. Brown*, 7 Vet.App. 495, 496–97 (1995) (holding that the Board's decision warranted reversal because the Board not only failed to articulate reasons and bases for its factual and legal conclusions and failed to fulfill its duty to assist, but there was no evidence contradicting the veteran's claim); *Hicks, supra* (holding that where there is absolutely no plausible basis in the record for the Board's decision and the decision is clearly erroneous in light of the uncontroverted evidence of record, the appropriate remedy is to reverse the decision of the Board).

■ Generally, to prove service connection, a claimant must submit (1) medical evidence of a current disability, (2) medical evidence, or in certain circumstances lay testimony, of in-service incurrence or aggravation of an injury or disease, and (3) medical evidence of a nexus between the current disability and the in-service disease or injury. *See Caluza v. Brown*, 7 Vet.App. 498 (1995). The evidence of record shows that in 1995, after x-ray examination, the appellant was diagnosed with C4 spondylosis. That diagnosis is undisputed and establishes that the appellant has a current cervical spine disability. It is also undisputed that the appellant was involved in a jeep accident while in service. However, the Court finds that the record on appeal is inadequate to permit the Court to reverse the decision of the Board and to find that the appellant's neck condition is service connected. *See Zink* and *Hicks*, both *supra.*

The appellant originally submitted a 1993 opinion that his neck and back pain was caused by C1 vertebrae subluxation. Subluxation means a partial dislocation. *See* WEBSTER'S MEDICAL DESK DICTIONARY 685 (1986). In February 1996, Dr. Denton also opined that the in-service jeep accident had "caused the first cervical vertebrae to misalign, or displace to the right of the occipital condyles of the skull." Those opinions are not uncontroverted evidence of a medical nexus sufficient to warrant reversal of the Board's decision in this case. First, as the Board found, the opinion of Dr. Denton is based on the appellant's history that he had had neck problems since his discharge from service. The Board found the medical records from 1950 to 1966, which contained no complaints or findings regarding the appellant's cervical spine, to be of more probative weight than the appellant's account. For that reason, the Board found that Dr. Denton's opinion lacked probative value. The Board's determination regarding the weight of Dr. Denton's opinion has a plausible basis in the record and will not be disturbed by this Court. *See Reonal, supra.*

Second, there is also medical evidence of record which indicates that the appellant did not suffer a C1 subluxation at the time of his in-service accident. His separation examination found that his spine was normal. An

April 1966 VA examination also found the appellant's musculoskeletal system to be normal. In fact, the first objective evidence of record that the appellant suffered from a cervical spine disorder is the 1995 x-ray report finding C4 spondylosis. That x-ray examination did not find misalignment or dislocation of the appellant's C1 vertebrae. Therefore, the evidence of record is not conclusive that the appellant suffered a C1 subluxation as a result of the in-service jeep accident.

The appellant subsequently opined in December 1996 that he believed that his neck condition was related to the jeep accident because there existed, in his opinion, a correlation between persons diagnosed with cervical spondylosis and those who had previously suffered acceleration or deceleration injuries. However, the appellant's change in opinion regarding the etiology of his neck problem, itself creates sufficient doubt regarding the true nature of his neck condition such that the Court is compelled to remand this matter to the Board for further development and reajudication. The Court is not left with a definite and firm conviction that the Board was clearly erroneous in its fact finding in this case. *See Zink, supra.* Therefore, the appropriate remedy is to remand the matter to the Board for further development and readjudication. *See id.*

### B. Earlier Effective Date

The Board is required to adjudicate, or if appropriate remand for further development, all issues reasonably raised from a liberal reading of the appellant's substantive appeal, including all documents and oral testimony in the record prior to the Board's decision. *See Brannon v. West,* 12 Vet.App. 32, 34 (1998); *Solomon v. Brown,* 6 Vet.App. 396, 402 (1994); *EF v. Derwinski,* 1 Vet.App. 324, 326 (1991). In this matter, in his Notice of Disagreement, the appellant expressed his belief that he was entitled to an earlier effective date for service connection of the degenerative changes in his lumbar spine. Therefore, the Board erred in failing to adjudicate the effective date issue, and the issue will be remanded to the Board for further proceedings. *See Solomon,* 6 Vet.App. at 403.

### III. CONCLUSION

The June 1997 decision of the Board is VACATED and the matter REMANDED for further proceedings in accordance with this decision. On remand, the appellant will be free to submit additional evidence and argument in support of his claims for service connection of his cervical spine disorder and for an earlier effective date for service connection of his lumbosacral disability. *See Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). Furthermore, a remand by this Court, or by the Board, confers on the appellant a right to VA compliance with such remand instructions, and the Secretary has a duty to insure proper compliance. *See Stegall v. West,* 11 Vet.App. 268, 271 (1998).