Citation Nr: 1505522 
Decision Date: 02/05/15 Archive Date: 02/18/15

DOCKET NO. 11-27 082 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to an initial disability rating higher than 10 percent for a low back disability.

2. Entitlement to an initial disability rating higher than 20 percent for a low back disability.


REPRESENTATION

Appellant represented by: John S. Berry, Attorney


ATTORNEY FOR THE BOARD

A. Gibson, Associate Counsel



INTRODUCTION

The Veteran served on active duty from July 1987 to June 1990.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a May 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Des Moines, Iowa. Jurisdiction of the claim was later transferred to the Lincoln, Nebraska.

In November 2013, the Board denied the Veteran's claim for a higher initial rating, which he appealed to the United States Court of Appeals for Veterans Claims (Court). In August 2014, the Court granted a Joint Motion for Remand (JMR) filed by the parties, discussed in more detail below, and the matter has returned to the Board for further review.

In this decision, the Board is granting an initial rating of 20 percent for the Veteran's low back disability. As the evidence has not been significantly developed since before May 2011, when service connection was granted, the issue of whether he is entitled to an even higher initial rating is REMANDED to the RO.


FINDING OF FACT

In resolving all doubt in the Veteran's favor, his functional loss during his frequent flares of pain reduces his total range of lumbar motion to below 120 degrees.


CONCLUSION OF LAW

The criteria for a 20 percent rating for a low back disability have been met. 
38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DCs 5237 (2014).



REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act (VCAA)

In March 2004, the Veteran was provided with the requisite notice as to the evidence and information needed to substantiate his claim. 38 C.F.R. § 3.159 (2014). 

VA has complied with its duty to assist in developing this claim. 38 C.F.R. § 3.159(c). Indeed, his relevant treatment records have been associated with the claims file. In May 2010, the Veteran was properly notified that the records from two private chiropractors were requested twice but not received, and he has not obtained them for review. Other private records have been associated with the claims file. 

The JMR agreed that the Board's November 2013 decision did not adequately discuss the May 2010 VA examination report. The parties agreed the May 2010 examination was problematic because the VA examiner indicated that he could not opine on the extent of the Veteran's functional loss during frequent flares of pain without resorting to speculation, without explaining why such an opinion would require speculation. That is, the examiner did not provide adequate rationale, and the Board did not explain why the resulting opinion was considered adequate. The examiner's opinion would be adequate if it is clear from the record that all due diligence in seeking relevant medical information was exercised. Jones v. Shinseki, 23 Vet. App. 382 (2010). 

The records available to the May 2010 VA examiner, which he indicated reviewing, include the March 2004 VA examination, records of VA treatment that do not pertain to the lumbar spine, and multiple copies of a January 2008 chiropractic appointment that do not contain range of motion measurements. During the examination, the information the examiner received was that the flares ranged from "mild to moderately severe" and that when they occurred he had "some" decreased range of motion. The Veteran has not alleged in statements the extent of his additional loss of range of motion, and the only other record addressing range of motion, at the time of the VA examination, were from the March 2004 VA examination. The Board finds that the VA examiner exercised diligence in reviewing the file and that the file did not contain evidence at that time that could have informed the opinion. However, evidence received in December 2011 contains range of motion measurements that could have informed the opinion. An updated medical opinion should have been obtained previously, which the Board is requesting in the REMAND section, below. The range of motion measurements received in December 2011 supplement the record, such that the Board can estimate his level of disability due to flares. As another examination is being directed and the issue of whether his initial rating should be even higher than the 20 percent rating assigned in this decision is being remanded for further development, the Board does not find the Veteran prejudiced by the Board's reliance on the private records to accord him the benefit of the doubt to award him a higher rating.

Increased Ratings

Disability ratings are assigned in accordance with VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. See 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321(a), 4.1 (2014). Separate diagnostic codes (DCs) identify the various disabilities. See generally 38 C.F.R. Part 4 (2014). If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2014). Reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3 (2014).

The Veteran's low back disability is currently rated as 10 percent disabling under DC 5237, which pertains to lumbosacral or cervical strain. 38 C.F.R. § 4.71a, DC 5237 (2014). Diagnostic Code 5237 is rated under the General Rating Formula for Diseases and Injuries of the Spine (General Formula). Id. Under the General Formula, a 10 percent rating is warranted for limited forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, a combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating is warranted for limited forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, a combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for limited forward flexion of the thoracolumbar spine of 30 degrees or less; or, favorable ankylosis of the thoracolumbar spine. A 50 percent rating is warranted for unfavorable ankylosis of the thoracolumbar spine. A 100 percent rating is warranted for unfavorable ankylosis of the entire spine. See 38 C.F.R. § 4.71a (2014). Neurologic abnormalities resulting from a service-connected spinal disability are to be separately rated. Id., Note (1). 

Normal range of motion for the thoracolumbar spine is flexion from 0 to 90 degrees, extension from 0 to 30 degrees, lateral flexion from 0 to 30 degrees, and rotation from 0 to 30 degrees. The combined range of motion of the thoracolumbar spine is 240 degrees. 38 C.F.R. § 4.71a, Plate V (2014). 

When evaluating disabilities that are based on limited motion, it is necessary to consider both the schedular criteria and any functional loss due to flare-ups of pain, fatigability, incoordination, pain on movement, and weakness. DeLuca v. Brown, 8 Vet. App. 202 (1995). Functional loss due to pain is rated at the same level as functional loss where motion is impeded. Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991). Pursuant to section 4.59, painful motion should be considered limited motion, even though a range of motion may be possible beyond the point when pain sets in. See Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995). 

As mentioned above, the Board finds that a 20 percent rating is warranted for the Veteran's low back disability. 

The record shows he received private chiropractic care multiple times between 2001 and 2006.

The March 2004 VA examination noted the Veteran complained of a decrease in flexibility and daily pain from his low back. He said that he had flares of pain with activity that could last for days. The Veteran was able to flex to 90 degrees, but there was objective pain at 60 degrees. He had full extension. The examiner opined that he had mild functional impairment due to being overly cautious when lifting things, but could not opine on additional limitation during flares of pain. He said that pain had the most impact on functionality. He did not have any neurologic abnormalities resulting from his lumbar spine. 

Private chiropractic records from January 2008 note pain in the lumbar spine that did not radiate, and a decreased range of motion that was not quantified. He had multiple sessions with this private chiropractor between January 2008 and March 2009.

At the May 2010 VA examination, he complained of constant pain, aches, stiffness, tightness, and occasional muscle spasm. He did not complain of any radicular symptoms, and none were found. He had a normal gait and normal spinal curvature. He said that he has flares of pain every two weeks that last from a few days to a few weeks, during which he has some decrease in his range of motion. He was able to flex to 90 degrees, with pain at 75 degrees, and extend to 25 degrees, with pain at 20 degrees. His rotation and lateral bending were all to 30 degrees with pain at 25 degrees. The examiner noted an increase in pain with repetitions but could not opine on the extent of additional limited function during flares.

A June 2010 private chiropractic record shows a combined range of motion of the lumbar spine of 115 degrees. This is the lowest recorded measurement of his lumbar spine's range of motion. Between June 2010 and November 2011, the Veteran's total range of motion varied from a low of 115 degrees to a high of 200. 

The Board finds that the June 2010 private chiropractic records shed some light on the Veteran's functionality at different times, and that his range of motion is, at times, significantly reduced to below 120 degrees. This extreme reduction was only noted one time, but the Veteran has complained of constant pain, and regular flares of pain every two weeks that can last up to two weeks in duration. The March 2004 VA examiner found him to have pain starting at 60 degrees flexion, and opined that his functionality was also reduced by being overly cautious when lifting things. In giving the Veteran the benefit of the doubt, the Board finds that this disability picture more closely approximates the criteria for a 20 percent rating.

The record does not show the Veteran's flexion was ever reduced to 30 degrees or less, even with pain, and therefore an even higher rating is not warranted under DC 5237.

The record does not reveal any neurologic abnormalities, and the Veteran does not so allege. He has not been diagnosed with intervertebral disc syndrome, so a rating based on incapacitating episodes is not available. 

Extraschedular Consideration

The Board considered whether this claim should be referred for consideration of an extraschedular rating pursuant to 38 C.F.R. § 3.321(b) (2014), which is a component of a claim for an increased rating. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). 

There is a three-step inquiry for determining entitlement to an extraschedular rating. Thun v. Peake, 22 Vet. App, 111 (2008). First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the level of disability and symptomatology and is found to be inadequate, the Board must then determine whether the claimant's disability picture exhibits other related factors, such as marked interference with employment or frequent periods of hospitalization. Third, if the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id.

The Board does not find that referral for an extraschedular rating is warranted. He complains of pain, stiffness, aches, and tightness in his lumbar spine, with frequent flares of pain. The evidence shows limited motion. He is overly cautious when lifting things, and the record shows that he recently missed two days from work due to pain. These signs and symptoms, and their resulting impairment, are contemplated by the rating schedule. The diagnostic codes in the rating schedule corresponding to disabilities of the back provide disability ratings on the basis of limitation of motion. See 38 C.F.R. § 4.71a, DCs 5235-5243 (2014). For all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40 (2014); Mitchell v. Shinseki, 25 Vet.App. 32, 37 (2011). For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet.App. at 37. In summary, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss.
 
Given the variety of ways in which the rating schedule contemplates functional loss for musculoskeletal disabilities, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture. In short, there is nothing exceptional or unusual about the Veteran's low back disability, and the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115.

The Board notes that under Johnson v. McDonald, 2013-7104, 2014 WL 3562218 (Fed. Cir. Aug. 6, 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. However, in this case, after applying the benefit of the doubt under Mittleider v. West, 11 Vet. App. 181 (1998), there are no additional service-connected symptoms that have not been attributed to a specific service-connected condition. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. For these reasons, the Board finds that the criteria for referral for extraschedular rating have not been met. 38 C.F.R. § 3.321(b)(1) (2014).

Rice considerations

In Rice v. Shinseki, the Court held that a claim for a total rating based on unemployability due to service-connected disability (TDIU), either expressly raised by the Veteran or reasonably raised by the record, is part of the claim for an increased rating. See Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). In this case, the Veteran has not contended that he is unable to work due to his back, and the evidence of record does not so suggest. Indeed, a December 2014 statement indicates he is still working, but had to take two days off due to his pain. Accordingly, the Board concludes that a claim for a TDIU has not been raised by the Veteran or the record.


ORDER

A 20 percent initial rating is granted for a low back disability.



REMAND

The issue of whether the Veteran is entitled to an initial rating higher than 20 percent is remanded for further development.

The Veteran submitted a statement in December 2014 noting that he had to take two days off from work due to increased pain, and that he was given prescription medication to treat it, instead of over-the-counter. This statement suggests an increase in the severity of his symptoms. As he has not been examined since May 2010, an updated examination should be conducted.

While on remand, additional treatment records should be obtained. 

Accordingly, the case is REMANDED for the following action:

1. Ask the Veteran to identify all treatment he has received for his low back since December 2003, and make arrangements to obtain all records not already associated with the claims file, to include updated records of treatment from current providers.

2. Following receipt of records, schedule the Veteran for an examination of the lumbar spine to assess the current severity of his low back disability. MAKE AN ATTEMPT TO SCHEDULE THE VETERAN FOR AN EXAMINATION DURING A FLARE UP OF PAIN.

The examiner is asked to review the claims file prior to the examination, and to conduct all relevant diagnostic tests. All neurologic abnormalities stemming from his low back disability are to be noted. The examiner is asked whether the Veteran has intervertebral disc syndrome (IVDS) and if so, to provide an opinion on the duration of incapacitating episodes in the preceding 12-month period.

The examiner is asked to take range of motion measurements, and to ascertain from the Veteran whether he is then experiencing a flare. If not, provide an opinion on the extent of limited motion or limited functionality during a flare up. If unable to so opine, please provide a reason as to why (that is, whether additional evidence should be obtained or additional testing achieved, or whether the examiner has reached the limits of medical knowledge).

All opinions must be accompanied by explanatory rationale, with citations to evidence of record and to medically accepted knowledge.

3. Following completion of the above directive, review the claims file to ensure compliance with this remand. If the examination report does not include adequate responses to the specific opinions requested, it must be returned to the examiner for corrective action.

4. Finally, after completing all of the above, and any additional development deemed warranted, readjudicate the claim on appeal. If the benefit on appeal remains denied, furnish the Veteran and his representative with a copy of a supplemental statement of the case (SSOC) and allow an appropriate time for response. Thereafter, return the file to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs