﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/21 Archive Date: 02/26/21

DOCKET NO. 200401-75497
DATE: February 26, 2021

ORDER

Entitlement to a disability evaluation in excess of 20 percent for degenerative disc disease (DDD) of the cervical spine, status post disc replacement, is denied.

FINDING OF FACT

The Veteran’s forward flexion of the cervical spine is at worse, manifested by forward flexion to 45 degrees, with no favorable ankylosis of the cervical spine, and manifested by muscle spasm severe enough to result in an abnormal gait as well as an abnormal sitting and standing posture.

CONCLUSION OF LAW

The criteria for an initial rating in excess of 20 percent for DDD of the cervical spine are not met. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5242.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from November 1996 to September 2010. The Veteran’s claim for an increased rating for her service-connected DDD of the cervical spine was received in November 2019. In a February 2020 rating decision, the Department of Veterans Affairs (VA) Agency of Original Jurisdiction (AOJ) denied the Veteran’s claim for an evaluation in excess of 20 percent for her DDD of the cervical spine. In March 2020, the Veteran submitted a Decision Review Request: Board Appeal (Notice of Disagreement), VA Form 10182, in accordance with the provisions of 38 C.F.R. § 20.202(b)(1), electing Direct Review by a Veterans Law Judge. Specifically, the Veteran was appealing the rating for her cervical spine disability and not her associated service-connected upper-extremity radiculopathy. Under this option, the Board may only consider the evidence before the AOJ at the time of the February 2020 rating decision on appeal.

Increased Rating

Disability evaluations are determined by the application of the facts presented to VA’s Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 3.321 (a), 4.1.

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991); Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Whether the issue is one of an initial rating or an increased rating, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as “staged” ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

The U.S. Court of Appeals for Veterans Claims (Court), in Correia v. McDonald, 28 Vet. App. 158 (2016), held that the final sentence of 38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with range of motion measurements of the opposite undamaged joint. Thus, the Court’s holding in Correia establishes additional requirements that must be met prior to finding that a VA examination is adequate.

Further, in evaluating joint disabilities, VA must consider granting a higher rating in cases in which functional loss due to pain, weakness, excess fatigability, or incoordination is demonstrated, and those factors are not contemplated in the relevant rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). The Court clarified that although pain may be a cause or manifestation of functional loss, limitation of motion due to pain is not necessarily rated at the same level as functional loss where motion is impeded. See Mitchell v. Shinseki, 25 Vet. App. 32 (2011); cf. Powell v. West, 13 Vet. App. 31, 34 (1999); Hicks v. Brown, 8 Vet. App. 417, 421 (1995); Schafrath v. Derwinski, 1 Vet. App. at 592. Additionally, the Court has stated that flare-ups must be factored into an examiner’s assessment of functional loss. Sharp v. Shulkin, 29 Vet. App. 26, 32 (2017). Under 38 C.F.R. § 4.59, painful motion is a factor to be considered with any form of arthritis; however, 38 C.F.R. § 4.59 is not limited to disabilities involving arthritis. See Burton v. Shinseki, 25 Vet. App. 1 (2011). Painful motion is entitled to a minimum 10 percent rating, per joint, even if there is no actual limitation of motion. Mitchell v. Shinseki, supra.

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of his symptoms. Layno v. Brown, 6 Vet. App. 465, 470 (1994). 

Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

1. Entitlement to a disability evaluation in excess of 20 percent for DDD of the cervical spine, status post disc replacement

At the outset, the Board notes that effective February 7, 2021, VA revised the criteria for rating certain musculoskeletal disabilities. See 85 Fed. Reg. 76,453 (November 30, 2020). However, these revisions are not applicable to the current appeal as the Appeals Modernization Act rating decision on appeal pre-dates the effective date of the changes. As such, the legal criteria outlined below reference and apply the pre-February 7, 2021 changes. 

The Veteran’s cervical spine DDD is rated under the provisions of Diagnostic Code (DCs) 5242. 38 C.F.R. § 4.71a (2020). DC 5242 requires rating under the General Rating Formula for Diseases and Injuries of the Spine (“General Rating Formula”) unless evaluated under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes. Intervertebral disc syndrome (IVDS) is to be rated under whichever method results in the higher evaluation when all disabilities are combined under 38 C.F.R. § 4.25. See 38 C.F.R. § 4.71a, DCs 5235-5243. The most recent VA examination found that the Veteran’s neck disability did not include IVDS, nor does the record reflect any incapacitating episodes due to service-connected neck symptomatology as defined by regulation that would result in a higher disability evaluation under the IVDS Rating Formula. See 38 C.F.R. § 4.71a, DC 5243; see also January 2020 VA DBQ examination.

Under the General Rating Formula for Diseases and Injuries of the Spine, in pertinent part, pursuant 38 C.F.R. § 4.71a, DC 5242, a 20 percent rating is warranted when forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or the combined range of motion of the cervical spine not greater than 170 degrees; or there is muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A rating of 30 percent is assigned when forward flexion of the cervical spine is 15 degrees or less; or, favorable ankylosis of the entire cervical spine is found. A 40 percent rating is warranted if there is unfavorable ankylosis of the entire cervical spine. A 100 percent rating is warranted if there is unfavorable ankylosis of the entire spine.

As noted above, when evaluating musculoskeletal disabilities, VA may, in addition to applying the schedular criteria, assign a higher disability rating when the evidence demonstrates functional loss due to limited or excessive movement, pain, weakness, excessive fatigability, or incoordination, to include during flare-ups and with repeated use, if those factors are not considered in the rating criteria. See 38 C.F.R. §§ 4.40, 4.45, 4.59; see also DeLuca, Burton, Correia, and Sharp, all supra. 

The Veteran contends that her service-connected DDD of the cervical spine is more disabling than reflected by the 20 percent rating assigned.

An October 2019 private treatment record indicated that the Veteran had neck pain. Upon examination, the Veteran had normal range of motion: however, the Veteran reported some pain at the base of her neck with right rotation. An image study revealed that the Veteran did not have stenosis, cord signal abnormality, or significant interval change.

In a November 2019 statement, the Veteran noted that every day after work she used a heating pad for one hour to treat her neck pain. She stated that her neck had a more limited range of motion. She wanted a new examination as her neck condition worsened. 

A November 2019 private treatment record noted that the Veteran had severe neck pain with some limited range of motion, particularly with right rotation. 

In January 2020, the Veteran underwent a VA examination. She was diagnosed with degenerative arthritis of the cervical spine with limitation of motion. She underwent a C5-6 disc replacement in 2008. An October 2019 image study revealed cervical spine degenerative changes, as well as C6-7 superimposed left foraminal disc extrusion which appeared to cause severe left neural foraminal narrowing. She reported constant neck pain, as well as severe intermittent pain manifested by throbbing, achy, stiff posterior neck pain. She reported flares with activities that required repeated neck movements, heavy lifting, and raising her arms over her head. She treated her neck pain with rest, stretches, ice/heat, muscle relaxers, and pain medication. She reported functional loss of the cervical spine and described difficulty driving for long periods of time which required immediate application of a heat pad. Range-of-motion testing found the Veteran to have forward flexion and extension to 45 degrees, extension to 10 degrees, bilateral lateral flexion to 35 degrees, right lateral rotation to 70 degrees, and left lateral rotation to 50 degrees. Pain was noted on examination and caused functional loss. There was evidence of pain on weight bearing. There was evidence of localized tenderness or pain on palpitation of the joint that was over the bilateral paracervical musculature. There was no functional loss with repetitive testing. The examiner noted that after a complete examination of the Veteran, review of her complete history and current subjective complaints, combined with a review of the available records, the examiner had no basis to offer additional losses of function or motion when it came to repetitive use or during a flare-up. Specifically, the range of motion with flare-ups is the same as the range of motion noted in the initial range of motion section. The Veteran did not have guarding: however, she had muscle spasm of the cervical spine that resulted in an abnormal gait, as well as an abnormal sitting and standing posture. The Veteran did not have muscle atrophy. She did not have ankylosis of the spine. The Veteran did not have IVDS of the cervical spine. Also, the Veteran did not use assistive devices. She had an anterior neck surgical scar that measured 5 centimeters (cm) by 0.2 cm. The scar was not painful, had no signs of skin breakdown, was flat, had no inflammation, no edema, no keloid formation, and had no other disabling effects. Image studies revealed arthritis of the cervical spine. The Veteran did not have a vertebral fracture with loss of 50 percent or more of height. The examiner found that the Veteran had moderate impairment in activities requiring repetitive neck movements, lifting, reaching, and driving due to her neck condition. 

In her March 2020 notice of disagreement, the Veteran stated that her neck pain was worse and should be rated higher than a 20 percent disability rating. She noted that her service-connected bilateral upper extremity radiculopathy had been addressed, but her cervical spine disability has caused her the most pain. 

Upon review of the evidence, the Board finds that a rating in excess of 20 percent for the Veteran’s service-connected cervical spine disability is not warranted. As noted, in order to warrant the next higher rating of 30 percent under Diagnostic Code 5242, the Veteran must demonstrate forward flexion 15 degrees or less; or, favorable ankylosis of the entire cervical spine is found. At no time during the appeal period has the Veteran had forward flexion of her cervical spine measure 15 degrees or less. Also, the January 2020 VA examiner found that the Veteran did not have ankylosis. 

The Veteran’s claim for entitlement to a rating in excess of 20 percent for DDD of the cervical spine is denied because he has not shown forward flexion of the cervical spine at 15 degrees or less, and has not shown favorable ankylosis of the cervical spine. Notably, the most recent VA examiner noted that after a complete examination of the Veteran, review of her complete history and current subjective complaints, combined with a review of the available records, the examiner had no basis to offer additional losses of function or motion when it came to repetitive use or during a flare-up and specifically, found that the range of motion with flare-ups is the same as the range of motion noted in the initial range of motion section.

Finally, the January 2020 VA examination determined that the Veteran’s scar located on the anterior neck was found to be not painful or unstable and did not have a total area greater than 39 square cm. Thus, consideration of a separate evaluation for scars is not applicable.

The Board further acknowledges that the Veteran experienced intermittent pain, numbness, and tingling of her bilateral upper extremities. With regard to radiculopathy, the Board notes that the Veteran’s January 2020 VA examination showed evidence of moderate bilateral upper extremity radiculopathy. As noted, in this case, separate ratings are in effect for radiculopathy of the bilateral upper extremities and the AOJ has assigned separate ratings for these disabilities, currently a 30 percent rating for the left upper extremity and a 40 percent rating for the right upper extremity. See February 2020 rating decision. The Veteran has not appealed this determination. Further, there is no competent, credible and probative evidence of any other associated neurological impairment that would warrant separate ratings.

In reaching these conclusions, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, because the preponderance of the evidence is against the Veteran’s claim for a higher rating, that doctrine is not helpful to the Veteran. See 38 U.S.C. § 5107 (b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

 

 

S. L. Kennedy

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Costello, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.