http://www.va.gov/vetapp16/Files3/1626429.txt

Citation Nr: 1626429 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 11-21 199A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUES

1. Entitlement to a compensable initial rating for degenerative lumbar disc disease at L4-L5 with degenerative changes at T7 and T8 ("low back disability").
 
 2. Entitlement to a compensable initial rating for right hip status post superior acetabular labral tear repair ("right hip disability").
 
 3. Entitlement to a compensable initial rating for left foot pes planus ("left foot disability").
 
 4. Entitlement to a compensable initial rating for right shoulder degenerative changes ("right shoulder disability").

 5. Entitlement to service connection for a respiratory condition, to include sinusitis and allergic rhinitis.
 
 6. Entitlement to service connection for right foot pes planus.

 7. Entitlement to service connection for a gynecological condition, to include menorrhagia, dysmenorrhea, bacterial vaginosis, Human Papillomavirus (HPV), endometriosis, and uterine fibroids.

 8. Entitlement to service connection for residuals of a rib fracture, including chest pain.
 
 9. Entitlement to service connection for a cervical spine condition.
 
 10. Entitlement to service connection for chronic fatigue disorder.

REPRESENTATION

Veteran represented by: Texas Veterans Commission

ATTORNEY FOR THE BOARD

R. Kipper, Associate Counsel

INTRODUCTION

The Veteran served on active duty from August 1999 to September 2009.

These matters come before the Board of Veterans' Appeals (Board) on appeal from a March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in in Winston-Salem, North Carolina (RO). Jurisdiction currently lies with the RO in Waco, Texas.

In February 2016, the Board remanded this case for issuance of a supplemental statement of the case (SSOC). 

Regarding the Veteran's claim of entitlement to service connection for a respiratory condition, the Board notes that the Veteran's initial claim was for service connection for allergic rhinitis. The medical evidence of record also indicates that the Veteran has been diagnosed with sinusitis. Similarly, with regard to the Veteran's claim of entitlement to service connection for a gynecological condition, the claim was originally raised and adjudicated as a claim of service connection for menorrhagia. The medical evidence of record also indicates that the Veteran has been diagnosed with several other gynecological conditions. The scope of a claim includes any disability that may reasonably be encompassed by the claimant's description of the claim, reported symptoms, and the other information of record. Clemons v. Shinseki, 23 Vet. App. 1 (2009); Brokowski v. Shinseki, 23 Vet. App. 79 (2009). Given the foregoing, the Board has recharacterized the issues as styled on the title page. 

The issues of entitlement to increased ratings for a low back disability, a right hip disability, a left foot disability, and a right shoulder disability and entitlement to service connection for a cervical spine condition, a respiratory condition, a right foot pes planus, a gynecological condition, and residuals of a rib fracture are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

Chronic fatigue syndrome first manifested during active service. 

CONCLUSION OF LAW

The criteria for establishing entitlement to service connection for chronic fatigue syndrome have been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

As the Board's decision to grant the Veteran's claim of entitlement to service connection for chronic fatigue syndrome is completely favorable, no further action with respect to this issue is required to comply with the Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations. See, e.g., Bernard v. Brown, 4 Vet. App. 384 (1993); VAOPGCPREC 16-92, 57 Fed. Reg. 49747 (1992).

Service connection is warranted where the evidence of record establishes that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated thereby. 38 U.S.C.A. 1110, 1131 (West 2014); 38 C.F.R. 3.303(a) (2015).

Establishing service connection generally requires competent evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); see also Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d) (2015).

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which the claim is denied. See 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of matter, the benefit of the doubt will be given to the Veteran. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

The Board notes that it has thoroughly reviewed the record in conjunction with this case. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). Rather, the Board's analysis below will focus specifically on what the evidence shows, or fails to show, on the claim. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) (noting that the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant).

Service treatment records show complaints related to fatigue in July and August 2006. On a November 2008 report of medical history, the Veteran reported that she was "overly tired all the time even if I do get enough sleep." During a November 2008 VA pre-discharge examination, the Veteran reported chronic fatigue since 2006. The examiner noted "no documented medical treatment." After examination, the examiner indicated that there were no substantial clinical findings to support of diagnosis of chronic fatigue syndrome. 

In April 2009, after the November 2008 VA examination, but before the Veteran was discharged from service, she was diagnosed with chronic fatigue syndrome. The Veteran filed her claim for service connection in July 2009. 

Thus, the evidence shows that while the Veteran was still on active duty, and just two months before she filed her claim for service connection, she was diagnosed with chronic fatigue syndrome. Although post-service treatment records do not reflect a diagnosis of chronic fatigue syndrome, the requirement for service connection that a current disability be present is satisfied when a claimant has a disability during the pendency of that claim even though the disability resolves prior to the Secretary's adjudication of the claim. See McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Moreover, a current disability may also be found if the diagnosis of disability was prior to the claim, if the diagnosis is "sufficiently proximate to the filing of a claim so as to constitute evidence of a 'current diagnosis.'" Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013). Here, the Veteran complained of chronic fatigue during the pre-discharge examination in November 2008, and she was diagnosed with chronic fatigue syndrome in April 2009. The Veteran's claim was filed in July 2009, while the Veteran was still on active duty. Thus, the diagnosis and the claim were essentially contemporaneous; as such, the requirement of current disability is met. The fact that the chronic fatigue syndrome may have since resolved or become asymptomatic is a rating consideration that is irrelevant at this juncture. 

Given the in-service diagnosis of chronic fatigue syndrome, which also meets the criteria for a current diagnosis, and resolving any doubt in the Veteran's favor, the Board finds that chronic fatigue syndrome had its onset in service. 38 C.F.R. § 3.102 (2015).

ORDER

Entitlement to service connection for chronic fatigue syndrome is granted.

REMAND

After a thorough review of the Veteran's claims file, the Board has determined that additional evidentiary development is necessary prior to the adjudication of the remaining issues on appeal.

Outstanding Records

With respect to the claim of entitlement to service connection for a gynecological condition, the Board notes that there may be outstanding private treatment records. In this regard, VA treatment records show that the Veteran reported undergoing a hysterectomy for fibroids and "bad periods" in January 2013 at St. Davis Hospital. Additionally, a February 2015 VA treatment record shows that she reported undergoing surgery for endometriosis in January 2015. When VA is put on notice of the existence of private medical records, VA must attempt to obtain those records before proceeding with the appeal. See Lind v. Principi, 3 Vet. App. 493, 494 (1992); Murincsak v. Derwinski, 2 Vet. App. 363 (1992). Because it appears that there may be outstanding private medical records containing information pertinent to this claim, those records should be obtained on remand.

With regard to each of the claims on appeal, a remand is required to obtain potentially outstanding VA treatment records. Specifically, the claims file contains VA treatment records from the Temple VA Medical Center (VAMC). However, a November 2010 VA treatment record shows that the Veteran reported that she used to be seen at a VAMC in Tennessee before she moved to Texas. Upon remand, the RO should attempt to locate any outstanding VA treatment records from September 2009 to the present from a Tennessee VAMC. 38 C.F.R. § 3.159(c)(2) (2013); Bell v. Derwinski, 2 Vet. App. 611 (1992) (observing that any VA treatment records that have been generated up to and including the date of the Board's decision, whether or not filed in the appellant's claims folder, are in the constructive possession of the Board and must be considered). Additionally, as the record indicates that the Veteran receives ongoing VA treatment, updated treatment records should be obtained.

Service Connection 

As noted above, the Veteran was afforded a VA pre-discharge examination in November 2008. The examiner opined that there were no substantial clinical findings to support diagnoses of residuals of a rib fracture, right foot pes planus, allergic rhinitis, or menorrhagia. All four issues were denied in the March 2010 rating decision on the basis that no current disabilities were shown. 

Since the pre-discharge examination, VA treatment records show complaints related to chest pain as a residual of a rib fracture, diagnoses of sinusitis and rhinitis, a diagnosis of "flat feet," and numerous diagnoses related to a gynecological condition. However, despite in-service treatment for related conditions and post-service diagnoses and complaints, no further examinations have been conducted since the pre-discharge examination in November 2008. Therefore, the Veteran should be should be afforded new VA examinations to determine the nature and etiology of any currently diagnosed conditions. See McClain v. Nicholson, 21 Vet. App. 319 (2007) (a "current disability" exists if the diagnosed disability is present at the time of the claim or during the pendency of that claim); see also McLendon v. Nicholson, 20 Vet. App. 79 (2006).

Regarding the claim of entitlement to service connection for a cervical spine condition, the Board finds that the evidence, at this juncture, does not necessitate the provision of a VA examination. However, as potentially pertinent VA treatment records may be added to the record, additional evidence may yet be provided which meets the McLendon threshold.

Increased Ratings

With respect to the Veteran's increased rating claims, the Board notes that the Veteran was last afforded a VA examination to assess the severity of her service-connected disabilities in November 2008, almost eight years ago. Numerous records have been associated with the claims file since that time, and overall the evidence suggests that the Veteran's disabilities may have worsened. Moreover, the Veteran specifically claimed that her service-connected disabilities had worsened in an April 2015 claim. Additionally, with regard to the Veteran's low back disability, the Board notes recent treatment records showing possible neurological involvement. Specifically, a May 2015 VA treatment record shows a diagnosis of lumbar radiculopathy. In light of the amount of time since the last examinations and evidence of worsening symptoms, the Board finds that the Veteran should be afforded new VA examinations to determine the current severity of her low back, right hip, right shoulder, and left foot disabilities, to include any neurological manifestations. See Snuffer v. Gober, 10 Vet. App. 400 (1997) (noting that a veteran is entitled to a new VA examination where there is evidence that the condition has worsened since the last examination); Caffrey v. Brown, 6 Vet. App. 377, 381 (1994) (determining that Board should have ordered contemporaneous examination of Veteran because a 23-month old exam was too remote in time to adequately support the decision in an appeal for an increased rating).

Accordingly, the case is REMANDED for the following action:

1. Obtain and associate with the Veteran's claims file all outstanding VA treatment records documenting treatment for the issues on appeal dated from September 2009 to the present, to specifically include any VA treatment records from a Tennessee VAMC. 

Additionally, send the Veteran and her representative a letter requesting that the Veteran provide sufficient information, and if necessary, authorization to enable it to obtain any additional private treatment records pertinent to the claim on appeal that are not currently of record, to specifically include, but not limited to, records regarding a hysterectomy in 2013 at St. Davis Hospital and records regarding surgery for endometriosis in 2015.

If any of the requested private records are unavailable, inform the Veteran and afford her an opportunity to submit any copies in his possession. Allow the Veteran an appropriate amount of time to respond. 

All records obtained pursuant to this request must be included in the Veteran's claims file. If the search for such records has negative results, documentation to that effect should be included in the claims file in accordance with 38 C.F.R. § 3.159(c)(1).

2. After all outstanding records have been associated with the claims file, the Veteran should be scheduled for a VA examination regarding the claimed respiratory condition. The examiner must be provided the Veteran's claims file for review, and any indicated studies must be completed. Following examination of the Veteran and review of the claims file, the examiner should provide an opinion as to whether it is at least as likely as not (i.e., 50 percent or greater probability) that the Veteran has a respiratory condition that had its onset in service or is etiologically related to her active service, to include the documented in-service treatment for upper respiratory infections and allergic rhinitis.

The examiner's report must reflect consideration of the Veteran's entire documented medical history and assertions and all lay evidence. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what, if any, additional evidence would be necessary before an opinion could be rendered. The examiner must provide a rationale for each opinion given.

3. After all outstanding records have been associated with the claims file, the Veteran should be scheduled for a VA examination regarding the claimed right foot pes planus. The examiner must be provided the Veteran's claims file for review, and any indicated studies must be completed. Following examination of the Veteran and review of the claims file, the examiner should provide an opinion as to whether it is at least as likely as not (i.e., 50 percent or greater probability) that the Veteran has right foot pes planus that had its onset in service or is etiologically related to her active service.

The examiner's report must reflect consideration of the Veteran's entire documented medical history and assertions and all lay evidence. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what, if any, additional evidence would be necessary before an opinion could be rendered. The examiner must provide a rationale for each opinion given.

4. After all outstanding records have been associated with the claims file, afford the Veteran an appropriate VA examination to determine the likely etiology of any currently diagnosed gynecological conditions. The examiner must be provided the Veteran's claims file for review, and any indicated studies must be completed. 

Following examination of the Veteran and review of the claims file, the examiner should provide an opinion as to whether it is at least as likely as not (i.e., 50 percent or greater probability) that a currently diagnosed gynecological condition had its onset in service or is etiologically related to her active service, to include the documented in-service treatment and diagnoses of menorrhagia and dysmenorrhea.

The examiner's report must reflect consideration of the Veteran's entire documented medical history and assertions and all lay evidence. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what, if any, additional evidence would be necessary before an opinion could be rendered. The examiner must provide a rationale for each opinion given.

5. After all outstanding records have been associated with the claims file, the Veteran should be scheduled for a VA examination regarding the claimed residuals of a rib fracture. The examiner must be provided the Veteran's claims file for review, and any indicated studies must be completed. Following examination of the Veteran and review of the claims file, the examiner should provide an opinion as to whether it is at least as likely as not (i.e., 50 percent or greater probability) that the Veteran has residuals of a rib fracture that had its onset in service or is etiologically related to her active service, to include the in-service diagnoses of costochondritis and Tietze's syndrome.

The examiner's report must reflect consideration of the Veteran's entire documented medical history and assertions and all lay evidence. If the examiner is unable to provide an opinion without resort to speculation, he or she should explain why this is so and what, if any, additional evidence would be necessary before an opinion could be rendered. The examiner must provide a rationale for each opinion given.

6. After all available records have been associated with the claims file the Veteran should be scheduled for an appropriate VA examination so as to determine the current nature and extent of all impairment due to the Veteran's service-connected degenerative lumbar disc disease at L4-L5 with degenerative changes at T7 and T8. The claims file must be made available to the examiner for review in conjunction with the examination, and the examination report must reflect that review was accomplished. All indicated tests should be performed and all findings should be reported in detail.

The examiner should describe the nature and severity of all manifestations of the Veteran's service connected degenerative lumbar disc disease at L4-L5 with degenerative changes at T7 and T8. All indicated studies, including X-ray and range of motion studies in degrees, should be performed. In reporting the results of range of motion testing, the examiner should identify any objective evidence of pain, and the degree at which pain begins. The extent of any weakened movement, excess fatigability, and incoordination on use should also be described by the examiner. Then, after reviewing the Veteran's complaints and medical history, the examiner should render an opinion, based upon his or her best medical judgment, as to the extent to which the Veteran experiences functional impairments such as weakness, excess fatigability, incoordination, or pain due to repeated use or flare-ups, and should portray these factors in terms of degrees of additional loss in range of motion (beyond that which is demonstrated clinically), if feasible.

The examiner should also note all neurologic abnormalities and diagnoses and indicate whether any diagnosed neurologic condition or conditions are related to the Veteran's service connected degenerative lumbar disc disease at L4-L5 with degenerative changes at T7 and T8. The examiner should describe the level of severity of the neurologic symptom and describe the limitation(s) caused by any identified neurologic abnormalities associated with the spine disability. 

If there are no neurological manifestations, that fact must be expressly noted in the report. If neurological symptoms are present, but determined not to be related to the Veteran's spine disability, a rationale for that opinion must be provided. If neurological symptoms are deemed to be related to the Veteran's spine disability, the examiner should identify the nerve impaired and indicate whether there is complete or partial paralysis, neuralgia, or neuritis; and whether any partial paralysis, neuritis or neuralgia is mild, moderate, moderately severe, or severe.

The examiner is specifically asked to comment on the Veteran's reports of experiencing pain, numbness, and paresthesia in her upper and lower extremities and VA treatment records from May and July 2015 showing diagnoses of saddle paresthesia and lumbar radiculopathy.

Finally, the examiner should discuss the impact, if any, as well as a full description of the effects, that the Veteran's low back disability has upon her ability to perform ordinary activities of daily living and occupational tasks.

The examiner must provide a rationale for each of the opinions that takes into account the Veteran's reports of her history and her current symptoms. The reasons and bases for each opinion are to be fully explained with a complete discussion of the evidence of record and sound medical principles, which may reasonably explain the medical guidance in the study of this case.

7. After all available records have been associated with the claims file the Veteran should be scheduled for an appropriate VA examination so as to determine the current nature and extent of all impairment due to the Veteran's service-connected right hip status post superior acetabular labral tear repair. The claims file must be made available to the examiner for review in conjunction with the examination, and the examination report must reflect that review was accomplished. All indicated tests should be performed and all findings should be reported in detail.

The examiner should describe the nature and severity of all manifestations of the Veteran's service connected right hip status post superior acetabular labral tear repair. All indicated studies, including X-ray and range of motion studies in degrees, should be performed. In reporting the results of range of motion testing, the examiner should identify any objective evidence of pain, and the degree at which pain begins. The extent of any weakened movement, excess fatigability, and incoordination on use should also be described by the examiner. Then, after reviewing the Veteran's complaints and medical history, the examiner should render an opinion, based upon his or her best medical judgment, as to the extent to which the Veteran experiences functional impairments such as weakness, excess fatigability, incoordination, or pain due to repeated use or flare-ups, and should portray these factors in terms of degrees of additional loss in range of motion (beyond that which is demonstrated clinically), if feasible.

Additionally, the examiner should determine whether the Veteran has ankylosis of the hip; fracture of the shaft or anatomical neck of the femur; or malunion of the femur. 

Finally, the examiner should discuss the impact, if any, as well as a full description of the effects, that the Veteran's right hip disability has upon her ability to perform ordinary activities of daily living and occupational tasks.

The examiner must provide a rationale for each of the opinions that takes into account the Veteran's reports of her history and her current symptoms. The reasons and bases for each opinion are to be fully explained with a complete discussion of the evidence of record and sound medical principles, which may reasonably explain the medical guidance in the study of this case.

8. After all available records have been associated with the claims file the Veteran should be scheduled for an appropriate VA examination so as to determine the current nature and extent of all impairment due to the Veteran's service-connected left foot pes planus. The claims file must be made available to the examiner for review in conjunction with the examination, and the examination report must reflect that review was accomplished. All indicated tests should be performed and all findings should be reported in detail.

The examiner should describe the nature and severity of all manifestations of the Veteran's service connected left foot pes planus, including evidence, if any, of swelling, callouses, pain on manipulation, inward bowing of the tendo achillis, and weight bearing over or medial to the great toe. The examiner should discuss whether the symptoms are relieved be shoe or arch support. The examiner should also indicate whether such disability is slight, moderate, moderately severe, or severe.

Finally, the examiner should discuss the impact, if any, as well as a full description of the effects, that the Veteran's left foot pes planus has upon her ability to perform ordinary activities of daily living and occupational tasks.

The examiner must provide a rationale for each of the opinions that takes into account the Veteran's reports of her history and her current symptoms. The reasons and bases for each opinion are to be fully explained with a complete discussion of the evidence of record and sound medical principles, which may reasonably explain the medical guidance in the study of this case.

9. After all available records have been associated with the claims file the Veteran should be scheduled for an appropriate VA examination so as to determine the current nature and extent of all impairment due to the Veteran's service-connected right shoulder degenerative changes. The claims file must be made available to the examiner for review in conjunction with the examination, and the examination report must reflect that review was accomplished. All indicated tests should be performed and all findings should be reported in detail.

The examiner should describe the nature and severity of all manifestations of the Veteran's service connected right shoulder degenerative changes. All indicated studies, including X-ray and range of motion studies in degrees, should be performed. In reporting the results of range of motion testing, the examiner should identify any objective evidence of pain, and the degree at which pain begins. The extent of any weakened movement, excess fatigability, and incoordination on use should also be described by the examiner. Then, after reviewing the Veteran's complaints and medical history, the examiner should render an opinion, based upon his or her best medical judgment, as to the extent to which the Veteran experiences functional impairments such as weakness, excess fatigability, incoordination, or pain due to repeated use or flare-ups, and should portray these factors in terms of degrees of additional loss in range of motion (beyond that which is demonstrated clinically), if feasible.

Finally, the examiner should discuss the impact, if any, as well as a full description of the effects, that the Veteran's right shoulder disability has upon her ability to perform ordinary activities of daily living and occupational tasks.

The examiner must provide a rationale for each of the opinions that takes into account the Veteran's reports of her history and her current symptoms. The reasons and bases for each opinion are to be fully explained with a complete discussion of the evidence of record and sound medical principles, which may reasonably explain the medical guidance in the study of this case.

10. Thereafter, the RO/AMC must review the claims file to ensure that the foregoing requested development has been completed. In particular, review the requested medical opinions to ensure that they are responsive to and in compliance with the directives of this remand and if not, implement corrective procedures. See Stegall v. West, 11 Vet. App. 268 (1998).

11. After completing the above, conduct any additional development deemed necessary, to potentially include providing a VA examination regarding the Veteran's claimed cervical spine condition. Thereafter, readjudicate the Veteran's claims in light of all evidence of record, including all additional evidence received. If the benefits sought on appeal are not granted, the Veteran and her representative should be furnished with a supplemental statement of the case and afforded an opportunity to respond before the file is returned to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
WAYNE M. BRAEUER 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs