http://www.va.gov/vetapp16/Files4/1634346.txt

Citation Nr: 1634346 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 12-17 519 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska

THE ISSUES

1. Entitlement to an initial disability rating in excess of 30 percent for posttraumatic stress disorder (PTSD), to include anxiety disorder not otherwise specified. 

2. Entitlement to an initial compensable disability rating for cervical muscle strain on the right side. 

3. Entitlement to an initial compensable disability rating for bruxism. 

4. Entitlement to an initial compensable disability rating for headaches. 

5. Entitlement to service connection for a traumatic brain injury (TBI).

6. Entitlement to service connection for memory loss.

7. Entitlement to service connection for dizziness, to include as secondary to service-connected disabilities. 

8. Entitlement to an effective date earlier than December 16, 2011, for the award of service connection for PTSD, to include anxiety disorder not otherwise specified. 

9. Entitlement to an effective date earlier than December 16, 2011, for the award of service connection for cervical muscle strain on the right side. 

REPRESENTATION

Appellant represented by: John S. Berry, Attorney 

ATTORNEY FOR THE BOARD

R. Costello, Associate Counsel

INTRODUCTION

The Veteran had active duty for training (ACDUTRA) from May 1998 to July 1998 and active military service from October 2004 to December 2005.

These matters come before the Board of Veterans' Appeals (Board) on appeal from November 2011, June 2012, February 2013, and January 2015 rating decisions of the VA Regional Office (RO) in Lincoln, Nebraska. A November 2011 rating decision denied the claims of service connection for a TBI and memory loss. A June 2012 rating decision denied the claim of service connection for dizziness. A February 2013 rating decision granted service connection for bruxism and headaches, assigning each noncompensable disability ratings. 

In a decision dated in November 2014, the Board granted service connection for PTSD and a cervical muscle strain on the right side. Also, the Board denied the Veteran's service connection claim for dizziness and remanded the issues of entitlement to an initial compensable disability rating for bruxism, an initial compensable disability rating for headaches, entitlement to service connection for a TBI, and entitlement to service connection for memory loss. The Board finds the RO complied with the November 2014 remand instructions. 

The Veteran appealed the Board's November 2014 denial of service connection for dizziness to the U.S. Court of Appeals for Veterans Claims (Court) and also filed a notice of disagreement with the RO's January 2015 assignment of a 30 percent rating for PTSD, a noncompensable rating for his cervical muscle strain on the right side, and the effective dates for the grant of service connection for PTSD and a cervical muscle strain on the right side. In a memorandum decision dated in December 2015, the Court set aside the Board's November 2014 decision to deny service connection for dizziness and remanded the appeal back to the Board to address the issue of secondary service connection. 

The issues of entitlement to higher initial ratings for PTSD, cervical muscle strain, bruxism, and headaches, and entitlement to service connection for dizziness and memory loss, are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. The Veteran does not have a current diagnosis of a TBI or TBI residuals. 

2. The RO's denial of service connection for PTSD in August 2009 is final. 

3. The Veteran did not contact VA with regard to his PTSD claim until he filed the second claim in December 2011; nothing in the file could be construed as an earlier informal claim for service connection for PTSD.

4. The Veteran did not file a claim for entitlement to service connection for a neck disability until December 2011; nothing in the file could be construed as an earlier informal claim for service connection for a neck disability. 

CONCLUSIONS OF LAW

1. The criteria for service connection for a TBI have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.303 (2015).

2. An effective date earlier than December 16, 2011, is not warranted for the award of service connection for PTSD, to include anxiety disorder not otherwise specified. 38 U.S.C.A. §§ 5101, 5107, 5110, 7105 (West 2014); 38 C.F.R. §§ 3.1, 3.105, 3.151, 3.155, 3.156, 3.157, 3.400, 20.302, 20.1103 (2015).

3. An effective date earlier than December 16, 2011, is not warranted for the award of service connection for a cervical muscle strain on the right side. 38 U.S.C.A. §§ 5101, 5107, 5110 (West 2014); 38 C.F.R. §§ 3.151, 3.400 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

VA's duty to notify was satisfied by letters in September 2011 and February 2012. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

As to VA's duty to assist, all necessary development has been accomplished. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's VA medical records, and identified private treatment records have been obtained to the extent available. As noted in the November 2014 Board decision, the Veteran's service treatment records, except for his March 1997 enlistment examination, and his complete personnel records are not of record. Memorandums dated in April 2009 and August 2009 set forth the RO's efforts to obtain the Veteran's service treatment records and complete personnel record and show that they were unavailable. The Veteran was notified that his records were unavailable and invited to submit any records he had in his possession; no additional records were received. In cases where records are lost or presumed lost, a heightened duty is imposed on the Board to consider the applicability of the benefit of the doubt doctrine, to assist the claimant in developing the claim, and to explain its decision. See Russo v. Brown, 9 Vet.App. 46 (1996). However, no presumption, in favor of the claimant or against VA, arises when there are lost or missing service records. See Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005).

In April 2015 a letter was sent to the Veteran requesting that he provide sufficient information to obtain records from Dr. P.W., or any other private provider whose records had not yet been obtained, to which he did not reply. He was advised the prior release for Dr. P.W. had expired and he needed to complete a new one. The AOJ substantially complied with the Board's November 2014 remand instructions. Thus, an additional remand to comply with the Board's directives is not required. See D'Aries v. Peake, 22 Vet. App. 97, 104-106 (2008); Stegall v. West, 11 Vet. App. 268 (1998). These are private treatment records, so nothing further can be done without the Veteran completing a release form. 

Also, the Veteran was provided VA examination of his claimed TBI. The examination and associated report was adequate because, along with the other evidence of record, it provided sufficient information to decide the appeal and a sound basis for a decision on this particular claim. The examination report was based on examination of the Veteran by the examiner with appropriate expertise who thoroughly reviewed the claims file. 38 C.F.R. § 3.159(c)(4); Barr v. Nicholson, 21 Vet. App. 303 (2007). Examinations are not pertinent to earlier effective date claims.

Therefore, VA has satisfied its duties to notify and assist, and there is no prejudice to the Veteran in adjudicating this appeal. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 

II. Service Connection

The Veteran claims service connection for a TBI, specifically, contending in his August 2011 claim that in 2005 he was in close proximity to two IED blasts and had a lot of difficulty with short term memory loss. He also had frequent headaches. In his December 2011 notice of disagreement the Veteran's representative avers that since the IED explosion, the Veteran experienced headaches, dizziness, anxiety, depression, difficulty concentrating, remembering, and reading. 

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). Regulations provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d). 

In order to prevail on the issue of service connection, generally, there must be medical evidence of a current disability; medical evidence, or in certain circumstances, lay evidence of in-service occurrence or aggravation of a disease or injury; and competent evidence of a nexus between an in-service injury or disease and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Barr v. Nicholson, 21 Vet. App. 303 (2007); Pond v. West, 12 Vet. App. 341, 346 (1999). 

In determining whether service connection is warranted for a disability, VA must determine whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded the claimant. 

As noted above, service treatment records, except for his March 1997 enlistment examination, are not of record. However, it is noted that the Veteran served in combat. 

A September 2008 VA treatment record notes the Veteran had a TBI screening that revealed he had not been diagnosed with a TBI during deployment. While the Veteran experienced a blast or explosion of an IED during deployment, he denied having any symptoms immediately afterwards. The screen was negative. A May 2009 VA treatment record notes the Veteran did not relay a history of a traumatic brain injury. 

An October 2011 VA examination in conjunction with the Veteran's memory loss claim notes a diagnosis of a TBI was not located in the record. The examiner reviewed an October 2011 VA treatment record that noted the Veteran was exposed to an IED blast that did not result in loss of consciousness and had no after-effects. The examiner found the Veteran did not exhibit neuropsychological impairment due to his claimed TBI on active duty service, noting the Veteran did not lose consciousness, did not see stars, did not black out, or get dazed or confused, but instead remained totally cognizant of what happened. 

The Veteran was afforded a VA TBI examination in October 2011. The Veteran denied having any specific head injury, but a blast did hit his vehicle in Iraq in 2005. He did not lose consciousness. The examiner found the Veteran did not have a TBI or any residuals of a TBI. He explained that the Veteran denied any specific loss of consciousness or direct head injury; however, he complained of a decrease in memory since the incident and also complained of headaches. "[I]t appears that his headaches are likely secondary to his TM joint problem on the right side. When he has jaw issues and stress, these many times will extend up the right side of the head to the area around the ear, causing headaches." The examiner also opined that the headaches appeared less likely due to any specific IED explosions in Iraq. [The Veteran is, in fact, service-connected for headaches secondary to bruxism, and a claim for service connection for memory loss remains pending.]

An April 2012 VA psychiatric evaluation found the Veteran had not been diagnosed with a TBI. A September 2012 private treatment record notes the Veteran reported three possible incidents of concussion. He was unsure if any resulted in loss of consciousness. He was able to recall that two of these incidents were related to IED exposure during active duty. The report notes that the Veteran's "current cognitive profile is less likely due to reported concussion but rather due to probable post-traumatic stress disorder (PTSD), the symptoms of which are similar to concussion effects." The report further notes that the Veteran had been out of service for more than five years and had reported no additional injury to the head or medical issues since that time. [The Veteran is, in fact, service-connected for PTSD, so any cognitive issues resulting from that condition would be considered in determining the appropriate disability rating.]

An October 2012 VA TBI examination found the Veteran did not have a TBI or residuals of a TBI. The examiner opined that the Veteran's dizziness was less likely than not incurred in or caused by an explosion during service. He explained that the record from as far back as 2008 did not mention complaints of dizziness. "[I]f dizziness were truly an issue, then clinical visits would make some mention of them." A January 2014 VA treatment record notes the Veteran again reported headaches, but the report noted that these may be due to his chronic pain and depression. 

After a full review of the record, the Board finds that the claim must be denied.

The Board finds the most probative evidence as to whether the Veteran currently has a diagnosed TBI or residuals of a TBI to be the October 2011 and October 2012 VA examination opinions. The VA examiners came to their conclusions that the Veteran did not have a have a TBI or any residuals of a TBI after a review of the record and conducting a thorough examination and interview of the Veteran. The Board finds the VA examiners' opinions were clearly based upon a comprehensive and factually accurate review of the evidence from all sources, to include the Veteran's lay statements and post-service medical records. Indeed, these findings are corroborated by a September 2008 VA treatment record that revealed a negative screen for a TBI and an October 2011 VA examination in conjunction with the Veteran's memory loss claim that found a diagnosis of a TBI was not located in the record and the examiner's finding that the Veteran did not exhibit neuropsychological impairment due to his claimed TBI on active duty service, noting the Veteran did not lose consciousness, did not see stars, did not black out, or get dazed or confused, but instead remained totally cognizant of what happened. Also, an April 2012 VA psychiatric evaluation found the Veteran had not been diagnosed with a TBI, and a September 2012 private treatment record notes the Veteran's current cognitive profile was less likely due to reported concussion but rather due to probable PTSD. 

The Board also recognizes statements made by the Veteran related to a diagnosis of TBI and current residuals of a TBI. While the Board recognizes the Veteran's assertions, the Veteran is not competent to conclude that he developed a TBI or residuals of a TBI. Even accepting that he was exposed to IED blasts during service and/or head injuries, a claim for service connection encompasses the question of whether he has any current residuals from those injuries. Determinations of whether a current TBI or residuals exist, or the etiology of such TBI or residuals, is medical in nature. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); Barr v. Nicholson, 21 Vet. App. 303, 308 -09 (2007). The Veteran is not competent to address complex medical questions at issue in the instant claim. The opinions of the examiners accepted that the IED blasts/head injuries occurred as the Veteran reported, but then concluded the symptoms/residuals he complained of were not residuals of TBI, but, rather, were attributable to other medical conditions, such as bruxism with headaches and PTSD - conditions which he is already service-connected for. 

Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in disability. See 38 U.S.C.A. 
§§ 1110, 1131. Without a showing of a current disability in the instant claim, the Board has no choice but to deny the Veteran's claim for service connection. See 38 C.F.R. § 3.303; Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) ("In the absence of proof of a present disability there can be no valid claim.").

As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not applicable. See 38 U.S.C.A. § 5107(b); Gilbert, 1 Vet. App. At 53-56.

III. Earlier Effective Dates

The Veteran initially applied for service connection for PTSD in February 2009. The RO denied this claim in an August 2009 rating decision on the basis that the medical evidence of record failed to show the Veteran had a clinical diagnosis of PTSD. The Veteran was notified of the denial and of his appeal rights in a letter dated the same month. The Veteran did not appeal that decision or submit new and material evidence within one year, and it thus became final one year after he was notified of the decision. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 20.302, 20.1103. 

The Veteran's representative submitted a statement in December 2011 discussing the Veteran's anxiety, PTSD, and a neck disability. The statement was received by the RO on December 16, 2011, and accepted as a claim to reopen his PTSD and a new claim for a neck disability. The RO ordered VA examinations for the claimed disabilities in April 2012. A June 2012 rating decision denied the claims. The Veteran appealed these denials and a November 2014 Board decision found that as the Veteran received the Combat Action Badge for his service in Iraq and based on the VA treatment records showing a diagnosis of PTSD, it was at least as likely as not that the Veteran had PTSD that was related to service. The November 2014 Board decision also found that as the April 2012 VA examiner found it was at least as likely as not that the Veteran's right-sided upper neck discomfort was a continuation/extension of his temporomandibular (TM) joint pain, it was at least as likely as not that his cervical muscle strain on the right side was secondary to his service-connected bruxism. Based on these findings, the Board granted service connection for PTSD and cervical muscle strain on the right side as secondary to service-connected bruxism. 

As a threshold matter, a claim must be filed in order for any type of benefit to accrue or be paid. 38 U.S.C.A. § 5101(a); Jones v. West, 136 F.3d 1296, 1299 (Fed. Cir. 1998). An intent to apply for benefits is an essential element of any claim, whether formal or informal. Criswell v. Nicholson, 20 Vet. App. 501 (2006). A claim or an application is "a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit." 38 C.F.R. § 3.1(p); Brannon v. West, 12 Vet. App. 32 (1998); Lalonde v. West, 12 Vet. App. 378 (1999). An informal claim is any communication or action, indicating an intent to apply for one or more benefits under the laws administered by the VA. Such informal claim must identify the benefit sought. 38 C.F.R. § 3.155(a). Importantly, medical evidence reflecting treatment for and diagnosis of a condition does not constitute, by itself, an informal original claim for service connection under 38 C.F.R. § 3.155(a), "because the mere presence of the medical evidence does not establish an intent on the part of the veteran to seek" service connection for that condition. See MacPhee v. Nicholson, 459 F.3d 1323, 1326 (Fed. Cir. 2006). 

An examination or hospitalization report may be accepted as an informal claim if it meets certain requirements. 38 C.F.R. § 3.157(a). The date of outpatient or hospital examination or date of admission to a VA or uniformed service hospital will be accepted as the date of receipt of the claim. 38 C.F.R. § 3.157(b)(1) (2014). The date of receipt of evidence from a private physician or layman will be accepted when the evidence furnished by or in behalf of the claimant is within the competence of the physician or lay person and shows the reasonable probability of entitlement to benefits. 38 C.F.R. § 3.157(b)(2). Finally, date of receipt by VA of examination reports, clinical records, and transcripts of records will be accepted as the date of receipt of a claim received if received from State, county, municipal, recognized private institutions, or other Government hospitals. 38 C.F.R. § 3.157(b)(3). However, these provisions only apply "[o]nce a formal claim for pension or compensation has been allowed or a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree." 38 C.F.R. § 3.157(b); Crawford v. Brown, 5 Vet. App. 33, 35-36 (1993) (noting informal claim provisions of section 3.157 do not apply where "there has not been a prior allowance or disallowance of a formal claim for compensation or pension"); see also MacPhee, 459 F.3d at 1327-28.

In general, the effective date of an award based on an original claim for benefits is based on the filing of a claim for such benefits. 38 U.S.C.A. § 5110; 38 C.F.R. § 3.151. See Wells v. Derwinski, 3 Vet. App. 307 (1992). Benefits are generally awarded based on the date of receipt of the claim. 38 C.F.R. § 3.1(r), 3.400. Specifically with respect to a claim reopened after final disallowance, such as the PTSD claim at issue here, governing regulation provides that the effective date will be the date of receipt of the claim or the date entitlement arose, whichever is later. All effective date determinations must be based upon the facts found, unless otherwise specifically provided. 38 U.S.C.A. §§ 5101, 5110; 38 C.F.R. § 3.400.

The regulation pertaining to new and material evidence provides several exceptions to these rules. When new and material evidence is received prior to the expiration of the appeal period, or prior to the appellate decision if a timely appeal has been filed, such evidence will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period. Similarly, the receipt of any service records which had been in existence at the time of the denial but not associated with the claims file will trigger a de novo review as well. If benefits are then granted, the award will be effective on the date entitlement arose or on the date VA received the previously-denied claim. 38 C.F.R. § 3.156.

In this case, the provisions of 38 C.F.R. § 3.156 do not apply because the Veteran did not submit any new and material evidence within one year of the prior denial of service connection for PTSD. When the claim was ultimately granted, the new and material evidence was not a service record which had previously been in existence; rather, the new evidence consisted of VA treatment records that showed a diagnosis of PTSD related to the Veteran's military service. The fact that the Veteran had the Combat Action Badge was considered at the time of the August 2009 RO denial. 

The Board has carefully reviewed the record to identify any informal claim prior to December, 16, 2011, for both claims. The first communication from the Veteran or his representative pertaining to a neck disability was not until December 16, 2011. Pertaining to his PTSD claim, although the Veteran was afforded a VA examination in October 2011, in which the examiner reviewed an October 2011 VA treatment record that noted the Veteran reported symptoms of depression and frustrated mood, the Board does not find this to qualify as a claim to reopen. 

As noted above, the provisions of section 3.157 only apply "[o]nce a formal claim for pension or compensation has been allowed or a formal claim for compensation disallowed for the reason that the service-connected disability is not compensable in degree." 38 C.F.R. § 3.157(b); MacPhee, 459 F.3d at 1327-28 (holding that "a medical report will only be considered an informal claim [under § 3.157] when such report relates to examination or treatment of a disability for which service-connection has previously been established" (internal quotation marks omitted)). Because there had been no grant of a claim of entitlement to service connection for PTSD or disallowance for the reason that the service-connected disability is not compensable in degree, when VA received the medical records (whether from VA physicians or the private physicians), those records may not be considered an informal claim for service connection for PTSD under 38 C.F.R. § 3.157. Crawford, 5 Vet. App. at 35-36; MacPhee, 459 F.3d at 1327-28. The provision is simply not applicable on the facts of record.

Thus, the December 16, 2011, claim represents the first communication from the Veteran pertaining to his PTSD claim since the August 2009 denial of service connection for PTSD and his first communication pertaining to a neck disability. As such, it is a clear claim for the benefit sought, and the RO properly used the date these claims were received as the effective date when the benefit was granted. 

Thus, in these circumstances, the earliest possible effective date for the award of service connection for PTSD and cervical muscle strain on the right side is December 16, 2011; the date the Veteran's cervical muscle strain claim was received and his date to reopen his claim for PTSD was received by VA. Governing law dictates that it is the later of the two dates, when a claim is filed vs. when entitlement arose, which must be chosen as the effective date when a grant of service connection is implemented. As explained above, the law does not provide for an earlier effective date in this case. 

Although the Veteran's attorney submitted a general disagreement with the effective dates assigned, the Board has carefully reviewed his arguments, and there have been no specific allegations of why these effective dates were incorrect and/or why earlier dates were warranted.

The only other legal method to attack a final decision, such as the August 2009 decision on PTSD, is to file a motion to review the final decision based upon clear and unmistakable error. 38 C.F.R. § 3.105(a). Neither the Veteran nor his attorney has done so. His attorney is well-versed in veterans' law and presumably if he intended to raise an allegation of CUE, he would have done so in his filings disagreeing with the effective dates assigned, but he did not. Therefore, there is no CUE motion pending. 

ORDER

Service connection for a TBI is denied. 

An effective date earlier than December 16, 2011, for the award of service connection for PTSD is denied.

An effective date earlier than December 16, 2011, for the award of service connection for a cervical muscle strain on the right side is denied.

REMAND

As a general matter, the Board previously remanded the TBI, memory loss, bruxism, and headache claims, noting that there were indications in the record he had received private treatment. The Remand asked that he complete releases for Dr. P.W. and from any other provider he identified (emphasis added). The April 2015 development letter asked him to not only complete a release for Dr. P.W. (which he did not do), but to also provide releases for any records not already in his file. He provided a release (and later the records) for chiropractic treatment only. Therefore, while there are indications in the file that he may have received other relevant private treatment, VA has satisfied its duty to assist by asking him to provide releases for any relevant treatment, and additional requests will not be made of him. If he wants VA to get any other records on his behalf, he is certainly free to submit the releases while this case is in remand status, or he can always choose to submit the records himself. 

PTSD and Cervical Spine

After the Veteran disagreed with the initial ratings assigned for his PTSD and cervical spine condition, he was scheduled for additional VA examinations by the VA Nebraska-Western Iowa Healthcare System in May and June 2015. The Veteran failed to report. In November 2015 he submitted a statement requesting his examinations be rescheduled because he alleged he had not received any letters or phone calls notifying him of the VA examinations. 

Although a presumption of regularity generally applies to VA processes and procedures such as notification of a scheduled VA examination, it must be noted that there are no actual copies of the notice letters in the file. The Veteran has shown a willingness in the past to report for examinations, and he did promptly respond to the supplemental statement of the case indicating his failure to report with his explanation. Considering all these facts, the Board concludes he should be given another opportunity. 

Bruxism and Headaches 

November 2015 and December 2015 private treatment records note physical examination of the Veteran's jaw revealed the region had moderate restricted movement. As the record did not quantify the Veteran's exact range of motion, but clearly indicated limitation of range of motion, the Board finds a new VA examination is warranted to assess the current nature and severity of his service-connected bruxism. As the Veteran's headaches were granted service connection as secondary to his bruxism, the requested bruxism VA examination may also be pertinent to the severity of his headaches. Therefore, a remand of this issue is necessary. 

Memory Loss

The Veteran's representative avers for the first time in a July 2015 statement that the Veteran's memory loss is secondary to his service-connected disabilities. A January 2014 VA treatment record notes the Veteran "lately has memory problems due to chronic pain and depression." As there is an indication that the Veteran's memory loss may be secondary to his service-connected disabilities, but there is no rationale, the Board finds a medical opinion is necessary. 

Dizziness

In regards to the Veteran's service connection claim for dizziness, the Court found that as the Veteran asserted for the first time on appeal that his dizziness could be the result of medications he took for his service-connected disabilities, the issue of secondary service connection for dizziness should be remanded to the Board. As the Veteran has not been provided with a proper duty-to-assist notice letter, specifically, the Veteran has not been informed of the requirements for establishing secondary service connection for this claim under 38 C.F.R. § 3.310, upon remand, the Veteran must be provided with this requisite notice. See 38 U.S.C.A § 5103(a); 38 C.F.R. § 3.159. 

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran with appropriate notice, pursuant to the VCAA under 38 C.F.R. § 3.310 for his claim for service connection for memory loss and dizziness to include as secondary to service-connected disabilities.

2. Attempt to obtain and associate with claims file all VA treatment records from Omaha from March 2015 to the present. 

3. Then, schedule the Veteran for VA examinations to assess the current nature and severity of his service-connected PTSD and cervical muscle strain on the right side. 

4. Also, schedule the Veteran for a VA examination to assess the current nature and severity of his service-connected bruxism, to include any associated symptoms such as headaches. 

5. Also, with regard to the memory loss and dizziness service connection claims, obtain a VA medical opinion. The claims folder and a copy of this REMAND should be reviewed by the examiner, and the examiner must annotate that the examination report that the claims file was in fact made available for review in conjunction with the examination. The examiner is requested to address the following questions: 

(a) Whether it is at least as likely as not (i.e., a likelihood of 50 percent or greater) that memory loss was proximately caused by, due to, or aggravated by (made chronically worse) any of the Veteran's service-connected disabilities, to include cervical muscle strain on the right side, bruxism, headaches, and PTSD, to include anxiety. 

(b) Whether it is at least as likely as not (i.e., a likelihood of 50 percent or greater) that dizziness was proximately caused by, due to, or aggravated by (made chronically worse) any of the medications the Veteran takes for his service-connected disabilities, to include cervical muscle strain on the right side, bruxism, headaches, and PTSD, to include anxiety. 

Note: The term "at least as likely as not" does not mean merely within the realm of medical possibility, but that the medical evidence for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation as it is to find against it.

A complete rationale for all opinions must be provided. Separate opinions as to causation and aggravation must be provided.

If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide complete explanations stating why this is so. In so doing, the examiner shall explain whether inability to provide a more definitive opinion is the result of a need for additional information, or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question.

6. After completing the above and any other development deemed necessary, readjudicate the claims. If any benefit sought on appeal is not granted, the Veteran and his representative should be provided a supplemental statement of the case and an appropriate time period for response. The case should then be returned to the Board for further consideration, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
MICHELLE L. KANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs