Citation Nr: 1730423 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 11-12 540 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUE

Entitlement to service connection for a pulmonary disorder.


REPRESENTATION

Appellant represented by: Colorado Division of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

J. Smith, Counsel



INTRODUCTION

The Veteran served on active duty from January 1965 to October 1984 in the United States Navy, with service in the Republic of Vietnam.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a December 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado.

In April 2015, the Veteran testified before the undersigned during a hearing at the RO. A transcript of the hearing is included in the electronic claims file. 

In July 2015 and March 2016, the Board remanded the claim for a pulmonary disorder for further development.

The Board recognizes that in September 2016, the Veteran filed a timely notice of disagreement (NOD) in response to a December 2015 rating decision. Given that this NOD was filed so recently and the RO is likely actively processing it, a remand of these claims for the issuance of a statement of the case (SOC) would be premature at this time. See Manlincon v. West, 12 Vet. App. 238 (1999).



FINDING OF FACT

A pulmonary disorder is not attributable to service.


CONCLUSION OF LAW

The criteria for entitlement to service connection for pulmonary disorder have not been met. 38 U.S.C.A. §§ 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2016).

REASONS AND BASES FOR FINDING AND CONCLUSION

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Regulations also provide that service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).
Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999).

The standard of proof to be applied in decisions on claims for Veterans' benefits is set forth at 38 U.S.C.A. § 5107. A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102. When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996). 

The record shows the Veteran has current hypoxemia, documented, for example, on VA examination in November 2016.

Service treatment records (STRs) show that on entry into service, the Veteran's lungs and chest were normal. The STRs generated during the course of his military service, however, show a number of pertinent entries. For example, in February 1965 and September 1969, he had bronchitis. A January 1969 chest x-ray was normal. In November 1969 he had recurrent bronchitis and mild bronchial asthma. In December 1969, the Veteran was treated for a cough and chest congestion. In January 1970, he was evaluated for bronchial asthma. In September 1972, he received treatment for chest pain and shortness of breath. A chest x-ray was normal. In November and December 1972 the Veteran reported chest pain; a possible allergy was noted. Chest x-rays in April 1970, March 1981, and July 1981 were normal. In September 1982, he had pulmonary function tests conducted. The testing showed no large airway obstruction, but a small airway obstruction responsive to bronchodilators. The pulmonologist determined there was no pulmonary disease. On examination in May 1984, the Veteran's pulmonary functioning measurements were listed. The examiner noted a history of frequent chest colds, a chronic cough secondary to being in smoky areas, and asthma in 1970.

The Veteran reports that he has current respiratory or pulmonary problems, including asthma, related to service. At the April 2015 hearing he testified that his current disorder is related to exposure to dust from fiberglass and welding in service.

On VA examination in October 2009, the examiner noted the in-service documentation of asthma. The Veteran reported no breathing problems in a clean environment, but that he had coughing and shortness of breath in polluted environments. He reported his symptoms were due to breathing welding dust in service. He smoked from 1965 to 1979, but had not smoked since. The examiner performed pulmonary function tests, which were normal. A chest x-ray was taken, which was also normal. The examiner opined there was insufficient clinical evidence for current asthma and an opinion was not rendered. 

In October 2015, a VA examination was scheduled pursuant to an underlying Board remand, but the VA clinicians found it unnecessary to examine the Veteran based on the absence of findings of interstitial lung disease in 2009. The clinician noted that the VA facility was understaffed and providers were needed in clinical settings. The clinician stated that based on the negative findings in 2009, an opinion could not be rendered. 

In December 2015, the Veteran submitted a private sleep study documenting hypoxemia (low oxygen in the blood) and dyspnea (difficult or labored breathing).

In March 2016, the Board found the October 2015 report unacceptable and remanded the claim for a VA examination.
On VA examination in November 2016, the Veteran reported being exposed to fiberglass, fumes, and gases in service. He reported he was treated for asthma. He reported current difficulty breathing when around smoke, fumes, or dust. He reported chest congestion, wheezing, and a chronic cough. 

The examiner provided a thorough recitation of the pertinent STRs, including the records from 1965, 1969, 1970, 1972, 1982, and 1984. Post-service records, including a computed tomography (CT) scan of the chest from 2015 and pulmonary function testing from 2013, were reviewed. 

The examiner opined that the current symptoms were less likely than not incurred in or caused by service. While asthma was diagnosed during service prior to 1972, in 1982 the Veteran was examined by a pulmonologist at the Naval Regional Medical Center. The pulmonologist found no evidence of pulmonary disease. The examiner explained that given this, the asthma had either resolved by 1982 or the prior diagnosis was incorrect. Addressing the 2015 private medical records documenting hypoxemia, the examiner explained that the records showed low oxygen while sleeping. The cause for this, according to those records, was physiologic restriction (obesity). The body mass restricted the normal movement of the diaphragm and chest wall, causing the Veteran to have inadequate amounts of air into and out of the lungs while supine. The examiner stated this was a restrictive lung disease. Asthma, an obstructive lung disease, was either inaccurately diagnosed in service or resolved in service. Additionally, while a post-service CT scan showed calcified granulomas, granulomas in the lung are signs of processes (infectious, inflammatory, etc.) that have occurred in the past. After a number of years, the lung parenchyma isolates these granuloma by surrounding them with calcium. A calcified granuloma is a sign of an old process that has occurred in the lung and is no longer active. These calcified granuloma have historical significance, but do not result in active/current symptoms.

Considering the pertinent evidence in light of the governing legal authority, the Board finds that the preponderance of the evidence is against the claim. The probative evidence does not show that the only current disorder, hypoxemia, is related to the Veteran's active military service, or that a chronic disability was incurred in service. A pulmonary disorder was not found within one year of separation from service; rather, the evidence reflects that the Veteran's hypoxemia was not shown until many years after service discharge. The fact that he sought treatment for other conditions after service, but not a pulmonary disorder, weighs against the credibility of any statements that his disorder persisted since discharge. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (lengthy period of absence of medical complaints for condition can be considered as a factor in resolving claim); Caluza v. Brown, 7 Vet. App. 498 (1995).

The medical opinion evidence is also persuasive. The November 2016 VA examiner addressed the contentions of service connection, but opined that the Veteran's hypoxemia was not related to his exposures in service but was due to another etiology, physiologic restriction. The examiner based his conclusions on an examination of the claims file, including the STRs, post-service treatment records and diagnostic reports. He reviewed and accepted the reported history and symptoms in rendering the opinions, and provided a rationale for the conclusions reached.

The Board has considered the matter of service connection based on herbicide agent exposure, given the Veteran's service in Vietnam during the Vietnam Era. Hypoxemia is not a disorder presumed to be associated with herbicide agent exposure, but the United States Court of Appeals for the Federal Circuit has determined that an appellant is not precluded from establishing service connection with proof of actual direct causation. 38 C.F.R. § 3.309(e); Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994). 

The VA examiners did not provide an opinion regarding a direct relationship between herbicide agent exposure in service and his hypoxemia. However, any error in this regard is harmless. The examiners reviewed the entire claims file, including records documenting and discussing his Vietnam service, but identified another etiology for the disorder. See Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion). Moreover, the record does not indicate, and the Veteran does not assert, any etiological relationship between his hypoxemia and his herbicide agent exposure. Thus, neither direct nor presumptive service connection is warranted for the disorders as due to herbicide agent exposure. 

The only evidence to the contrary of the VA examination reports is the lay evidence. The Board finds that the Veteran's lay assertions are both admissible and believable. Consequently, the Board will weigh the lay statements against the medical evidence.

The VA examiner was a medical professional who each reviewed the claims file and considered the reported history, including the lay assertions. The examiner, in providing the requested medical opinion, used his expertise in reviewing the facts of this case and determined that the Veteran's hypoxemia was not related to service. As the examiner explained the reasons for his conclusions based on an accurate characterization of the evidence, his opinions are entitled to substantial probative weight. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). In weighing the VA examiner's opinions against those of the Veteran, the Board finds that the credibility and probative value of the specific and reasoned statement of the trained medical professional outweighs that of the general lay assertions.

The Board has considered the applicability of the benefit of the doubt doctrine, but as the preponderance of the evidence is against the appellant's claim, that doctrine is not applicable to the claim. 

In reaching this decision, the Board considered the Veteran's claim and decided entitlement based on the evidence. The Veteran has not raised any other issues, nor have any other issues been reasonably raised by the record, with respect to his claim. See Doucette v. Shulkin, 28 Vet. App. 366, 369-70 (2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).





ORDER

Service connection for a pulmonary disorder is denied.



______________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs