﻿Citation Nr: AXXXXXXXX
Decision Date: 09/26/19 Archive Date: 09/26/19

DOCKET NO. 190208-2986
DATE: September 26, 2019

ORDER

Entitlement to service connection for diabetes mellitus type II (DMII) is granted.

Entitlement to service connection for a peripheral circulatory disorder, originally claimed as peripheral vascular disease, to include as secondary to DMII, is granted.

REMANDED

Entitlement to service connection for hypertension, to include as secondary to DMII, is remanded.

Entitlement to service connection for chronic kidney disease, to include as secondary to DMII is remanded.

Entitlement to service connection for cataracts, to include as secondary to DMII, is remanded.

Entitlement to service connection for peripheral neuropathy of the left lower extremity, to include as secondary to DMII, is remanded.

Entitlement to service connection for peripheral neuropathy of the right lower extremity, to include as secondary to DMII is remanded.

Entitlement to service connection for cardiomegaly, to include as secondary to DMII, claimed as an enlarged heart, is remanded.

Entitlement to service connection for tremors, to include possible Parkinson’s disease, is remanded.

FINDINGS OF FACT

1. Resolving reasonable doubt in the Veteran’s favor, the Board finds that the Veteran stepped foot on land in Vietnam; therefore, exposure to herbicides is presumed. 

2. The Veteran’s DMII is causally related to the Veteran’s exposure to herbicides during service. 

3. The Veteran has a peripheral circulatory disorder that is causally related to his DMII.

CONCLUSIONS OF LAW

1. The criteria for service connection for DMII are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for service connection for peripheral circulatory disorder as secondary to DMII are met. 38 U.S.C. §§ 1110, 1131, 5107; 38 C.F.R. §§ 3.102, 3.310. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active duty service from August 1969 to August 1973 in the United States Navy.

The Board notes that the rating decision on appeal was issued in October 2017. In March 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)). An additional rating decision was issued in April 2018 under the modernized review system. 

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a chronic condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b); see also Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed.Cir.2013) (holding that only conditions listed as chronic diseases in 38 C.F.R. § 3.309(a) may be considered for service connection under 38 C.F.R. § 3.303(b)). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

Generally, in order to prove service connection, there must be competent, credible evidence of (1) a current disability, (2) in-service incurrence or aggravation of an injury or disease, and (3) a nexus, or link, between the current disability and the in-service disease or injury. See, e.g., Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Pond v. West, 12 Vet. App. 341 (1999). 

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board’s analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

1. Entitlement to service connection for DMII.

The Veteran contends that he has DMII that is causally related to exposure to herbicides during active service.

Veterans who, during active service, served in the Republic of Vietnam during the period beginning on January 9, 1962, and ending on May 7, 1975, shall be presumed to have been exposed to an herbicide agent, unless there is affirmative evidence of non-exposure. 38 U.S.C. §§ 1116; 38 C.F.R. § 3.307.

“Service in the Republic of Vietnam” includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. §§ 3.307(a) (6) (iii), 3.313(a).

If a veteran was exposed to a herbicide agent (to include Agent Orange) during active military, naval or air service and has contracted an enumerated disease to a degree of 10 percent or more at any time after service (except for chloracne and acute and subacute peripheral neuropathy which must be manifested within a year of the last exposure to an herbicide agent during service), the veteran is entitled to a presumption of service connection even though there is no record of such disease during service. 38 U.S.C. § 1116; 38 C.F.R. § 3.307, 3.309(e). 

The Veteran asserts that he was on the ground in Vietnam on two occasions to perform airplane maintenance on planes that did not make it back to the aircraft carrier. The Board notes that the record contains ship logs for the USS Saratoga, on which the Veteran served. The Veteran’s ship was in the Gulf of Tonkin seven times during his active service. The Veteran was an airplane mechanic. He provided details regarding the events that resulted in him stepping foot on land. The Veteran’s statements are consistent with the location and character of the Veteran’s service. As a result, the Board finds that there is at least an approximate balance of positive and negative evidence as to whether the Veteran set foot in Vietnam and therefore was exposed to herbicides. Accordingly, when giving the Veteran the benefit of the doubt, exposure to herbicides is conceded.

Regarding presumptive service connection for diseases associated with exposure to herbicide agents, it is warranted if a disease listed under § 3.309(e), with the exception of chloracne or other acneform disease, becomes manifest to a degree of 10 percent at any time after service. As opposed to the requirements for direct service connection, the disease need not manifest within the appellate period.

The medical evidence of record shows that the Veteran has a current diagnosis of DMII. The manifestation of his disability is consistent with at least a 10 percent evaluation under the appropriate diagnostic code. 38 C.F.R. § 4.119, Diagnostic Code (Code) 7913. As a result, the requirements of § 3.307(a) (6) are met and presumptive service connection of DMII is warranted on a presumptive basis.

In sum, there is at least an approximate balance of positive and negative evidence of record as to the Veteran’s assertions regarding exposure to herbicides, and there is evidence that he has a current diagnosis of DMII. As a result, service connection for DMII on a presumptive basis is warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.309(e).

2. Entitlement to service connection for a peripheral circulatory disorder, originally claimed as peripheral vascular disease, to include as secondary to DMII.

The Veteran contends that he has peripheral vascular disease that is causally related to his DMII. 

The Veteran has a diagnosis of a peripheral circulatory disorder. The Veteran’s VA treatment records show that his peripheral circulatory disorder was associated with his DMII. 

Upon review of the record, the Board finds the evidence to at least be in equipoise as to whether the Veteran’s current peripheral circulatory disorder is proximately due to his service-connected DMII. Accordingly, after resolving all doubt in favor of the Veteran, the Board finds that service connection for a peripheral circulatory disorder is warranted. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

REASONS FOR REMAND

1. Entitlement to service connection for hypertension, to include as secondary to DMII, is remanded.

The issues of entitlement to service connection for hypertension, chronic kidney disease, cataracts, and cardiomegaly are remanded to correct a duty to assist error that occurred prior to the April 2018 rating decision on appeal. The Agency of Original Jurisdiction (AOJ) did not obtain a VA examination prior to the rating decision on appeal regarding whether the disabilities are caused or aggravated by the Veteran’s service-connected DMII or by exposure to herbicides because they incorrectly found that the Veteran was not exposed to herbicides. However, based on the evidence associated with the claims file prior to the April 2018 rating decision, the Board finds that a medical opinion is required to determine whether his hypertension, chronic kidney disease, cataracts, and cardiomegaly are caused or aggravated by his service-connected disabilities. 

2. Entitlement to service connection for chronic kidney disease, to include as secondary to DMII is remanded.

Please see the analysis in section one above.

3. Entitlement to service connection for cataracts, to include as secondary to DMII, is remanded.

Please see the analysis in section one above.

4. Entitlement to service connection for cardiomegaly, claimed as an enlarged heart, to include as secondary to DMII, is remanded.

Please see the analysis in section one above. 

5. Entitlement to service connection for peripheral neuropathy of the left lower extremity, to include as secondary to DMII, is remanded.

The issues of entitlement to service connection for peripheral neuropathy of the bilateral lower extremities are remanded to correct a duty to assist error that occurred prior to the April 2018 rating decision on appeal. The AOJ did not obtain a VA examination prior to the rating decision on appeal to determine if the Veteran has a diagnosis of peripheral neuropathy. However, based on the evidence associated with the claims file prior to the April 2018 rating decision, the Board finds that a VA examination is required to determine whether he has a diagnosis of peripheral neuropathy and whether that diagnosis is caused or aggravated by a service-connected disability or his exposure to herbicides during service. 

6. Entitlement to service connection for peripheral neuropathy of the right lower extremity, to include as secondary to DMII is remanded.

Please see the analysis in section five above.

7. Entitlement to service connection for tremors, to include possible Parkinson’s disease, is remanded.

The issue of entitlement to service connection for tremors, claimed as Parkinson’s disease, is remanded to correct a duty to assist error that occurred prior to the April 2018 rating decision on appeal. The AOJ did not obtain a VA examination prior to the rating decision on appeal to determine if the Veteran has a diagnosis of Parkinson’s disease or whether his tremors are caused or aggravated by the Veteran’s service-connected DMII or by exposure to herbicides because they incorrectly found that the Veteran was not exposed to herbicides. However, based on the evidence associated with the claims file prior to the April 2018 rating decision, the Board finds that a VA examination is required to determine whether he has a diagnosis of Parkinson’s disease or whether his tremors are caused or aggravated by a service-connected disability or his exposure to herbicides during service. 

The matters are REMANDED for the following action:

1. Obtain an opinion from an appropriate clinician regarding the following: whether the Veteran’s hypertension, chronic kidney disease, cataracts, peripheral neuropathy, and cardiomegaly are: 

a. Whether the hypertension, chronic kidney disease, cataracts, and cardiomegaly are at least as likely as not related to in-service herbicide agent exposure.

b. Whether the hypertension, chronic kidney disease, cataracts, and cardiomegaly are at least as likely as not (1) proximately due to a service-connected disability, or (2) aggravated beyond its natural progression by a service-connected disability.

A complete rationale must be provided for all opinions offered. If any opinion cannot be offered without resort to mere speculation, the examiner must fully explain why this is the case and identify what, if any, additional evidence would potentially allow for a more definitive opinion. If an examination is required for the examiner to sufficiently address the above questions, then a new examination should be afforded.

2. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any peripheral neuropathy. The examiner should determine whether the Veteran has a diagnosis of peripheral neuropathy separately manifested from the service-connected peripheral circulatory disorder for which service connection has been granted. 

If the Veteran has peripheral neuropathy, the examiner should provide an opinion on the following:

a. Whether the peripheral neuropathy is at least as likely as not (1) proximately due to a service-connected disability, or (2) aggravated beyond its natural progression by a service-connected disability.

b. Whether the peripheral neuropathy is at least as likely as not related to in-service herbicide agent exposure.

A complete rationale must be provided for all opinions offered. If any opinion cannot be offered without resort to mere speculation, the examiner must fully explain why this is the case and identify what, if any, additional evidence would potentially allow for a more definitive opinion.

3. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any tremors. The examiner should determine whether the Veteran’s tremors constitute a diagnosis of Parkinson’s disease. If the Veteran’s tremors are not due to a diagnosis of Parkinson’s disease, the examiner should provide an opinion on the following:

a. Whether the tremors are at least as likely as not related to in-service herbicide agent exposure.

b. Whether the tremors are at least as likely as not (1) proximately due to a service-connected disability, or (2) aggravated beyond its natural progression by a service-connected disability.

A complete rationale must be provided for all opinions offered. If any opinion cannot be offered without resort to mere speculation, the examiner must fully explain why this is the case and identify what, if any, additional evidence would potentially allow for a more definitive opinion. 

 

 

B. MULLINS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Patricia Veresink

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.